716 F.2d 669
 BOATOWNERS AND TENANTS ASSOCIATION, INC., et al.,
Plaintiffs-Appellants/Cross-Appellees,
v.
PORT OF SEATTLE, a Municipal Corporation, et al.,
Defendants-Appellees/Cross-Appellants.
 Nos. 82-3477, 82-3512.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 7, 1983.
Decided Sept. 22, 1983.
 
 Kimberly Osenbaugh, Boglem & Gates, Seattle, Wash., for defendants-appellees/cross-appellants.
 William Bender, Seattle, Wash., for plaintiffs-appellants/cross-appellees.
 Appeal from the United States District Court for the Western District of Washington.
 Before HUG, POOLE, and NORRIS, Circuit Judges.
 HUG, Circuit Judge:
 
 
 1
 An association of pleasure craft owners brought this action, claiming the publicly owned marina at which they moored their boats was operated in a manner that violated federal law. They contended the imposition of unreasonable rates that created profit potential for the marina constituted a deprivation of federal statutory rights in violation of 42 U.S.C. Sec. 1983. We do not consider the merits of these claims. We conclude that section 1983 does not provide a cause of action to remedy the violations alleged by these plaintiffs.
 
 
 2
 * Boatowners and Tenants Association ("BOATA") is an association of pleasure craft owners who moor their boats at Shilshole Bay Marina on Puget Sound. The marina is owned and operated by the Port of Seattle, a municipal corporation. A federal grant appropriated under the River and Harbor Improvements Act, 33 U.S.C. Secs. 540-633, funded the construction of the Shilshole breakwater. In return for the grant, the Port Commission accepted responsibility for the development and operation of the marina facility. As developed, the marina can accommodate approximately 1400 boats and is described as the most desirable saltwater recreational moorage facility in the Seattle area. There is great demand for moorage at Shilshole. Boaters who wish to rent a slip must wait about ten years.
 
 
 3
 In 1981, the Port Commission staff recommended that moorage rental rates at Shilshole be increased so that rental revenue yielded 5% of the current value of the marina. The staff study showed that rates set at that level would be comparable to those at private marinas in the area and that because of the great demand for space at Shilshole, boaters would be willing to rent moorage at the proposed rate. The staff concluded that the proposed rates would provide a return on capital which could be invested in other, less profitable Port activities. After public hearings, the Port Commission adopted the staff's recommendation.
 
 
 4
 BOATA originally brought this action directly under the River and Harbor Improvements Act.[1] It claimed the Port's action violated the Act for three reasons: (1) the Act required that moorage rates be reasonable; (2) the Act required that the marina be operated on a nonprofit basis; and (3) the statutory requirement that the facility be "open to all on equal terms" precluded setting rates that excluded present tenants who were unable to pay the increase.
 
 
 5
 The Port sought dismissal of the action, claiming no private right of action could be implied from the language of the Act. The district court examined the legislative history of the appropriations measure under which Shilshole was funded. It concluded the Act was not enacted for the plaintiff's special benefit and that there was no indication of congressional intent to create a private remedy. It therefore held there was no private right of action under the Act.
 
 
 6
 The court then considered sua sponte whether BOATA might have stated a cause of action under 42 U.S.C. Sec. 1983. Relying on Maine v. Thiboutot, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), and Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), the court concluded that "[a]t least in the context of a cooperative federal-local project, plaintiffs may enforce federal statutory rights against state or local governmental interference under Title 42 U.S.C. Sec. 1983." The Port's motion to dismiss was denied on that basis.
 
 
 7
 The district court subsequently rejected BOATA's claims on the merits. It determined the Act imposed no requirement that rates be reasonable or that the Port operate the marina on a nonprofit basis. It held a brief bench trial to take evidence on whether the facility was "open to all on equal terms." Judgment was granted for the Port. The court concluded the marina was "open to all" because no favoritism or discrimination affected the allocation of berths, which were available on a first-come, first-served basis. It found no inequities in the assessment of rates to different classes of users because the use classifications were reasonable. BOATA appeals this judgment.
 
 
 8
 In a post-judgment motion, the Port claimed attorneys' fees under 42 U.S.C. Sec. 1988. The district court found BOATA's claims were not frivolous and were not pursued unnecessarily. In its cross-appeal, the Port seeks reversal of the denial of attorneys' fees.
 
 II
 
 9
 42 U.S.C. Sec. 1983 provides a cause of action for violation of a federal statute under color of state law. Maine v. Thiboutot, 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 67 L.Ed.2d 694 (1980); Meyerson v. Arizona, 709 F.2d 1235, 1238 (9th Cir.1983).[2] However, the Supreme Court has indicated that section 1983 does not provide a remedy for every statutory violation. This case requires us to determine whether the River and Harbor Improvements Act vests federal rights in BOATA that are enforceable under section 1983.
 
 
 10
 In Thiboutot, the Court held that section 1983 provided a very broad right of action to remedy federal statutory violations:
 
 
 11
 The question before us is whether the phrase "and laws," as used in Sec. 1983, means what it says, or whether it should be limited to some subset of laws. Given that Congress attached no modifiers to the phrase, the plain language of the statute undoubtedly embraces respondents' claim that petitioners violated the Social Security Act.
 
 
 12
 Thiboutot, 448 U.S. at 4, 100 S.Ct. at 2504.
 
 
 13
 In subsequent cases, the Court recognized two exceptions to the application of section 1983 to remedy statutory violations, requiring a determination (1) that Congress has not foreclosed private enforcement in the statute itself, and (2) that the statute at issue is "the kind that created enforceable 'rights' under Sec. 1983." Middlesex County Sewerage Authority v. National Sea Clammers Assoc., 453 U.S. 1, 19, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981); see also Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981).
 
 
 14
 With regard to the second exception, our review of cases from other circuits reveals divergent views of how broadly "rights" should be construed. At one extreme is the view, adopted by the district court in this case, that the plaintiff states a cause of action under section 1983 if he alleges injury resulting from the joint operation of a federal-state program. See e.g., Yapalater v. Bates, 494 F.Supp. 1349, 1358 (S.D.N.Y.1980), aff'd 644 F.2d 131 (2d Cir.1981), cert. denied, 455 U.S. 908, 102 S.Ct. 1255, 71 L.Ed.2d 447 (1982). This view finds support in Justice Powell's dissent in Thiboutot:
 
 
 15
 In practical effect, today's decision means that state and local governments, officers, and employees now may face liability whenever a person believes he has been injured by the administration of any federal-state cooperative program, whether or not that program is related to equal or civil rights.
 
 
 16
 448 U.S. at 22, 100 S.Ct. at 2513-2514 (emphasis in original).
 
 
 17
 This expansive view was later limited in Pennhurst, however, which makes clear that a section 1983 cause of action requires more than the existence of a joint federal-state program. That case involved the Developmentally Disabled Assistance and Bill of Rights Act, 42 U.S.C. Secs. 6000-6081, under which federal grants are provided to assist participating states in the treatment of the developmentally disabled. The plaintiff alleged the state's administration of its treatment program violated the statute. This allegation of injury arising from the joint program was an insufficient basis for the cause of action. The Court held that the so-called "Bill of Rights" section of the Act, 42 U.S.C. Sec. 6010, did not create "enforceable rights," and the case was remanded for a determination, inter alia, of whether other sections of the statute created "a 'right secured' by the laws of the United States within the meaning of Sec. 1983." 451 U.S. at 28, 101 S.Ct. at 1545.
 
 
 18
 At the other extreme, some courts have limited this cause of action to statutes that create civil or personal rights. In First National Bank of Omaha v. Marquette National Bank, 636 F.2d 195 (8th Cir.1980), cert. denied, 450 U.S. 1042, 101 S.Ct. 1761, 68 L.Ed.2d 240 (1981), the court refused to recognize an action based on the National Bank Act. It concluded Thiboutot was not so broad as to encompass actions based on statutes regulating business or economics. Instead, it limited section 1983 actions to claims "in the nature of the rights protected by the Civil Rights Act," including "fundamental human, highly personalized rights." Id. at 198. See also Chase v. McMasters, 573 F.2d 1011, 1017 (8th Cir.1978), cert. denied, 439 U.S. 965, 99 S.Ct. 453, 58 L.Ed.2d 423 (1978) (claim under Indian Organization Act of "constitutional dimension"); Gomez v. Florida State Employment Service, 417 F.2d 569, 579 (5th Cir.1969) (claim under Wagner-Peyser Act invokes "fundamentals of human dignity"). We find that this view cannot be supported as consistent with Thiboutot.[3]
 
 
 19
 A third approach to defining an enforceable federal right is drawn from Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).[4] Cort established four factors whereby it can be determined if Congress intended to imply a private right of action in a statute that does not provide one:
 
 
 20
 First, is the plaintiff "one of the class for whose especial benefit the statute was enacted,"--that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?
 
 
 21
 Id. at 78, 95 S.Ct. at 2088 (citations omitted) (emphasis in original). While the final three Cort factors focus on the existence of a remedy, the first concerns whether a federal right has been created.
 
 
 22
 In Fisher v. City of Tucson, 663 F.2d 861, 863 (9th Cir.1981), cert. denied, --- U.S. ----, 103 S.Ct. 178, 74 L.Ed.2d 146 (1982), we discussed the application of the first Cort factor and stated:
 
 
 23
 In California v. Sierra Club, the Court emphasized that the first Cort v. Ash factor requires not only a consideration of whether the plaintiff is a member of the class for whose benefit the statute was enacted, but also whether "Congress intended to confer federal rights upon those beneficiaries." 451 U.S. at 294, 101 S.Ct. at 1779, 68 L.Ed.2d at 108. Otherwise, the Court stated, any crime victim "would be deemed an especial beneficiary of the criminal statute's proscription." Id. 451 U.S. at 294, 101 S.Ct. at 1779, [68 L.Ed.2d] at 107.
 
 
 24
 We held that no private right of action existed under Section 503 of the Rehabilitation Act of 1973 even though Congress had created federal rights in handicapped persons. We found that the statute was clearly intended to specially benefit handicapped persons and to create rights in handicapped persons that were enforceable under the administrative procedures provided in the Act. However, we found that Congress did not intend to create a private right of action to enforce those rights under that statute. That left open the question whether the federal rights created by the Act could be enforced under section 1983, a claim which had not been asserted in the Fisher case. In Meyerson, 709 F.2d at 1239, this question was presented. The plaintiff sought to enforce the federal rights created by section 503 under section 1983. We did not reach the question whether the federal rights created by section 503, as identified in Fisher, would be sufficient under Pennhurst and Middlesex to support a section 1983 action. That question was reserved because the section 1983 action was barred by the other exception identified in Pennhurst and Middlesex: that Congress intended to provide an exclusive remedy within the statute and to foreclose private enforcement through other means. Id. at 1239.
 
 
 25
 In this case, we are not faced with the question raised in Meyerson because BOATA cannot establish that the River and Harbor Improvements Act created any federal rights in BOATA whatsoever. There is no indication that the statute was intended to benefit specially the pleasure craft owners who would utilize the marina, nor that Congress intended to confer federal rights on the pleasure craft owners.[5] Thus, even the limited federal rights recognized in Fisher are not present here. We hold that at least the existence of a federal right found under the analysis of the first factor in Cort, as elaborated in Fisher, is required in order to support a section 1983 action.
 
 
 26
 BOATA has not demonstrated that the statutory scheme was enacted for its special benefit. The River and Harbor Improvements Act does not focus on the benefited class. In enacting it, Congress declared "that water terminals are essential at all cities and towns located upon harbors or navigable waterways and that at least one public terminal should exist, constructed, owned, and regulated by the municipality ... and open to the use of all on equal terms." 33 U.S.C. Sec. 551. The district court examined the legislative history of the specific appropriation that funded Shilshole. See Rivers and Harbors Appropriation Act, Pub.L. No. 83-780, Sec. 101, 68 Stat. 1248, 1253 (1954). The court then made this finding:
 
 
 27
 Examination of the reports reveals that the purposes for the construction of the recommended breakwater and harbor were to prevent automobile traffic congestion and delay due to water traffic along canals requiring the raising and lowering of drawbridges, to lessen the necessity for construction of a third lock on the Washington Ship Canal, to reduce shipping traffic through canals and thereby increase boating safety, to decrease shipping costs, to provide a refuge for vessels caught in sudden squalls, and to save time and operating expenses to vessel operators.
 
 
 28
 The statutory language and legislative history thus indicate an intent to improve navigation, enhance commerce, and reduce vehicle-vessel traffic problems, all to the benefit of the general public. There is no evidence whatsoever of an intent to provide economical moorage or to create any special benefit for the class of pleasure craft owners. BOATA thus has no enforceable rights under the Act.
 
 
 29
 BOATA contends that determining whether an enforceable federal right exists for purposes of section 1983 under the analysis of the first factor in Cort renders Thiboutot meaningless. BOATA argues that a plaintiff who was unable to demonstrate a private right of action under the statute would necessarily be barred from seeking a section 1983 remedy. This analysis ignores the distinctions between the two causes of action.
 
 
 30
 There are both substantive and evidentiary distinctions between the two causes of action. An affirmative showing of congressional intent to create a private right of action is a substantive element of the right to proceed directly under the statute, and the plaintiff is assigned the burden of proving it. Meyerson, 709 F.2d at 1239; see Osborn v. American Ass'n of Retired Persons, 660 F.2d 740, 745 (9th Cir.1981). In contrast, the plaintiff who seeks to enforce a federal statutory right under section 1983 need not demonstrate congressional intent to provide access to that remedy. Middlesex, 453 U.S. at 20 n. 31, 101 S.Ct. at 2626 n. 31; Meyerson, 709 F.2d at 1239 n. 3. Instead, there is a presumption that a federal statute creating enforceable rights may be enforced in a section 1983 action. Pennhurst, 451 U.S. at 51, 101 S.Ct. at 1557 (White, J., dissenting in part.) The presumption is rebutted where there is evidence that Congress intended to preclude resort to private means of enforcement such as through section 1983. Congress could most clearly and obviously bar relief under section 1983 by specifying an exclusive means of enforcement within the statute. Absent such specificity, the courts are left to interpret congressional intent. That intent can be evidenced by the existence of a comprehensive remedial scheme created by the statute itself. Middlesex, 453 U.S. at 20, 101 S.Ct. at 2626; Meyerson, 709 F.2d at 1239. However, in the absence of such evidence that Congress intended that the statute provide the exclusive remedy, the plaintiff who establishes the existence of an enforceable right will be free to proceed under section 1983. Thus, Thiboutot is not rendered meaningless under this interpretation, for there could well be federal rights enforceable under section 1983 which are not enforceable by means of a private right of action under the statute creating them.
 
 III
 
 31
 The Port has claimed attorneys' fees under 42 U.S.C. Sec. 1988. That statute permits an award of fees for any action "properly brought under Sec. 1983." Thiboutot, 448 U.S. at 9, 100 S.Ct. at 2507. We find that the district court's denial of fees under section 1988 was not an abuse of discretion. See Hensley v. Eckerhart, --- U.S. ----, ----, 103 S.Ct. 1933, 76 L.Ed.2d 40, 53 (1983).
 
 
 32
 An award of fees is appropriate only when the action was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Hughes v. Rowe, 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980) (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978)). The Port's fee demand was based on the fact that BOATA continued to litigate after the court dismissed its claims that the Act required reasonable rates and nonprofit operation. The Port contended BOATA merely attempted to relitigate those issues at trial after it was apparent they were without foundation.
 
 
 33
 The district judge ordered the case to trial after he specifically stated he would not reconsider the nonprofit operation and reasonable rate requirement claims. He carefully delineated the issues on which he would receive evidence at trial, and BOATA attempted to provide evidence to prevail on those issues. The fact that its evidence was unpersuasive does not in itself justify the assessment of fees. Hughes, 449 U.S. at 14, 101 S.Ct. at 173. After hearing the entire case, the district judge concluded BOATA's claims were not frivolous. That determination was well within his discretion.
 
 
 34
 The judgment in No. 82-3477 is AFFIRMED. The judgment in No. 82-3512 is AFFIRMED. Each party shall bear its own costs.
 
 
 
 [1]
 Under Washington statutes, no state court action may be brought to challenge the Port's rate-setting activities
 
 
 [2]
 Section 1983 states that:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress.
 
 
 [3]
 Section 1983 actions brought to remedy constitutional deprivations may be based on property, as well as personal, rights. See Lynch v. Household Finance Corp., 405 U.S. 538, 542 [92 S.Ct. 1113, 1116-1117, 31 L.Ed.2d 424] (1972). We find nothing in the language of section 1983 or the reasoning of Thiboutot that requires imposition of the personal property rights distinction on this cause of action. We also believe the difficulty in defining that distinction would make such a classification of rights unworkable
 
 
 [4]
 The Cort definition of a federal right has been applied in this context by the Fourth Circuit. See Perry v. Housing Authority, 664 F.2d 1210, 1217 (4th Cir.1981)
 
 
 [5]
 We have held that the special benefit test is satisfied where the statute places "unmistakable focus on the benefited class." Limongelli v. Postmaster General, 707 F.2d 368, 371 (9th Cir.1983) (per curiam) (quoting Cannon v. University of Chicago, 441 U.S. 677, 691, 99 S.Ct. 1946, 1955, 60 L.Ed.2d 560 (1979))