**PLANNED PARENTHOOD OF BILLINGS, INC., Clayton McCracken, M.D. and Jane Doe, Plaintiffs,**

v.

**The STATE OF MONTANA, Ted Schwinden, individually and as Governor of the State of Montana, John Drynan, M.D., individually and as Director of the Montana Department of Health and Environmental Sciences, Defendants.**

**No. CV 85–182–BLG–JFB.**

United States District Court,
D. Montana,
Billings Division.

Feb. 14, 1986.

Joel E. Guthals, Billings, Mont., and Roger K. Evans, Dara Klassel, Barbara E. Otten, Planned Parenthood Federation of America, New York City, for plaintiffs.

Frank C. Crowley, Sp. Asst. Atty. Gen., Mont. Dept. of Health & Environmental Science, and Roger Tippy, Helena, Mont., for defendant.

## OPINION AND ORDER

BATTIN, Chief Judge.

On January 10, 1986, oral arguments were heard on plaintiffs' motion for summary judgment and defendants' motions for summary judgment and to dismiss. For the reasons stated below, plaintiffs' motion is granted and defendants' motions are denied.

## FACTS AND CONTENTIONS

Planned Parenthood of Billings, Inc., (PPB) is a non-profit corporation providing reproductive health care services for greater Yellowstone County, Montana. PPB's services include family planning counseling and medical services for both males and females. A large number of patients are low income women. PPB, owner of the building in which it is located, leases space and other services to the Yellowstone Valley Women's Clinic (YVWC), a non-profit corporation providing low cost surgical reproductive services including abortion. Plaintiff McCracken is a duly licensed physician providing family planning services at PPB and medical services at YVWC. Plaintiff Jane Doe receives services at PPB through subsidy and desires access to YVWC in the event of an unplanned pregnancy.

Title X of the Public Health Service Act, 42 U.S.C. §§ 300, 300a, *et seq.*, authorizes federal funding for family planning services. The funds are granted by the Department of Health and Human Services (DHHS) to the State of Montana which in turn administers the program through defendant John Drynan, head of the Montana Department of Health and Environmental

Sciences (MDHES), who contracts with local delegate agencies. PPB has received this funding, currently comprising 30–33% of its income, since 1972. Section 1008 of the Act, 42 U.S.C. § 300a–6, expressly prohibits funding programs using abortion as a method of family planning. PPB does not provide abortion services.

The General Appropriations Act of 1985 for the State of Montana, House Bill No. 500, effective July 1, 1985, provides in part that "[f]unds appropriated for family planning services are contingent upon the recipient providing such services in a physical plant that does not contain an abortion clinic or facility that performs abortions." Because of the newly enacted co-location proviso, MDHES informed PPB that it was not eligible for federal funding due to its space sharing contract with YVWC.

On June 7, 1985, plaintiffs initiated this suit pursuant to 42 U.S.C. § 1983 seeking a judgment under 28 U.S.C. §§ 2201 and 2202 declaring the co-locational proviso unconstitutional. On June 25, 1985, the Court issued a preliminary injunction, in accord with Rule 65(a) F.R.Civ.P., prohibiting enforcement of the proviso pending final determination of this matter. In their complaint plaintiffs asserted five causes for relief as follows: (1) the Appropriations Act adds an impermissible eligibility requirement for the Title X funds in violation of the Supremacy Clause of the United States Constitution, (2) the Act penalizes plaintiffs' and patients' rights to provide and receive family planning and abortion services, in violation of the right to privacy guaranteed by the Fourteenth Amendment to the United States Constitution, (3) the Act penalizes PPB's right to associate with YVWC, as guaranteed by the First and Fourteenth Amendments, (4) the Act penalizes PPB's right to equal protection by funding all other providers not located in the same physical plant as abortion facilities, in violation of the Fourteenth Amendment, and (5) the Act interferes with PPB's right to contract with YVWC, in violation of Article I, § 10, of the United States Constitution.

The parties agree that, except for the second cause, motions for summary judgment or to dismiss are appropriate methods of disposition. Because asserted factual matters exist in dispute as to the second cause, the burden on the right to abortion, it is not subject to discussion herein.

## DISCUSSION

■ Before the Court may address the merits of plaintiffs' Supremacy Clause argument, it is necessary to determine whether 42 U.S.C. § 1983 is available to plaintiffs as a remedy for enforcement of the Public Health Service Act. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In *Maine v. Thiboutet*, 448 U.S. 1, 4–8, 100 S.Ct. 2502, 2504–06, 65 L.Ed.2d 555 (1980), the Supreme Court held that § 1983 confers a private federal right of action, to be broadly construed, and for damages and injunctive relief to redress violations by state officials of rights created by federal statutes as well as by the Federal Constitution. Whether § 1983 is available to enforce a particular statute depends upon two factors: (1) Congress must not have foreclosed private enforcement of the statute and (2) the statute must create enforceable rights. *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 19, 101 S.Ct. 2615, 2625, 69 L.Ed.2d 435 (1981); *Pennurst State School and Hospital v. Halderman*, 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981). There is a presumption that a federal statute creating enforceable rights may be enforced in a § 1983 action. *Keaukaha-Panaewa Community Association v. Hawaiian Homes Commission*, 739 F.2d 1467, 1470 (9th Cir.1984).

■ As stated in *Almond Hill School v. U.S. Dept. of Agriculture*, 768 F.2d 1030, 1035 (9th Cir.1985), "[t]he first factor, foreclosure of private enforcement, ultimately asks whether Congress intended to preclude recourse to remedies outside of the particular statute [in this case, the Public Health Service Act]. Although the statute may not furnish a private remedy under its terms, such enforcement through § 1983 is still possible if Congress did not act in a manner that would suggest a prohibition on private enforcement. An intent to foreclose private remedies may be inferred if the remedial devices in the statute are 'sufficiently comprehensive' to suggest exclusivity, [*quoting Middlesex*, 453 U.S. at 20, 101 S.Ct. at 2626]." A reading of the Public Health Service Act does not reveal a precise or elaborate remedial scheme that would be obfuscated by allowing enforcement through a § 1983 action. Accordingly, the first part of the test is satisfied.

■ In analyzing the second factor, creation of enforceable rights, the Court in *Boatowners and Tenants Association v. Port of Seattle*, 716 F.2d 669, 671 (9th Cir.1983), noted the divergent views on how broadly "rights" should be construed. The Court suggested the proper approach to defining an enforceable federal right be drawn from *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975), namely a consideration whether the plaintiff is a member of the class for whose benefit the statute was enacted. In this case, the statutory language and legislative history indicate an intent to improve and expand the availability of and information concerning family planning services, and to assure proper supervision and administration of family planning services, by providing grants to public or nonprofit private entities or state health authorities. 1970 U.S. Code Cong. and Adm. News, pp. 5054, 5068–5082; 42 U.S.C. §§ 300, 300a, *et seq.* Plaintiffs, as especially benefitted from proper authorization and distribution of federal funding. Accordingly, plaintiffs fall within the class of those entitled to lawful coordination of funding by the MDHES. As such, plaintiffs satisfy the second factor of the test. Therefore, the Court concludes that because the Public Health Service Act creates federally enforceable rights in the plaintiffs and there exists no Congressional intent to preclude private enforcement, § 1983 provides a cause of action to remedy an alleged violation of the Act done under color of state law.

SUPREMACY CLAUSE

Plaintiffs assert the co-location proviso of H.B. 500 is unconstitutional because it adds a condition of eligibility not authorized by the Public Health Service Act. Defendants contend the proviso does not conflict with the federal legislation; rather, it is consistent with Congressional intent not to encourage or promote abortion under § 300a–6 of the Act.

The Supremacy Clause, found at U.S. Const., Art. VI, cl. 2, states:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

■ Under the Clause, even where Congress has not completely displaced state regulation of a specific area, state legislation is void to the extent it actually conflicts with federal law. *Fidelity Federal Savings & Loan Association v. de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). Such a conflict arises when "compliance with both federal and state regulation is a physical impossibility" or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Edgar v. Mite Corp.*, 457 U.S. 624, 631, 102 S.Ct. 2629, 2634, 73 L.Ed.2d 269 (1981), *quoting Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–143, 83 S.Ct. 1210, 1217, 10 L.Ed.2d

248 (1963), and *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

█ It is urged there is no "physical impossibility" to jointly comply with the federal and state legislation since PPB would remain eligible for funding if located in a building removed from YVWC. The argument cannot stand, for its converse is not true. Under H.B. 500, PPB is solely not eligible to receive federal funding administered by MDHES if it remains co-located with YVWC. It is elemental a blatant conflict exists between the state legislation and the federal legislation.

Under § 300a–6 of the Act, "[n]one of the funds appropriated under this subchapter shall be used in programs where abortion is a method of family planning." To literally comply with this mandate and remain eligible for funding, PPB needs only to refrain from employing or advocating abortion as a method of family planning. Nowhere is a family planning service prohibited from co-locating with a facility performing abortions or any other facility for that matter. Indeed, DHHS has continued funding of other family planning programs co-located with abortion clinics upon a showing that federal funding is separated from the abortion services. *See* report by the Comptroller General of the United States, "Restrictions on Abortion and Lobbying Activities in Family Planning Programs need Clarification," GAO/HRD 82–106 (September 24, 1982). There is no allegation the federal funding at issue is used in any form to subsidize YVWC. Quite to the contrary an audit conducted by DHHS and MDHES found the Title X funds received by PPB were used in compliance with the Public Health Service Act. *See* letters and enclosures from Drynan to Nora, Exhibits B and D, Affidavit of Joan McCracken in Support of Plaintiffs' Motion for Summary Judgment. Simply put, the co-location proviso defeats PPB's eligibility for federal funding that the defendants acknowledge would be otherwise available.

Even assuming, arguendo, the proviso was not in true conflict, it could not stand against the alternate test enunciated in *Edgar, supra.* While there is a possibility of bypassing the MDHES in favor of a direct grant, PPB is nonetheless entitled to the congressional intent of a lawful disbursement of funds through state agencies. The co-location proviso, at the very minimum, stands as an obstacle to the execution of the full purposes of Congress.

Based on the foregoing, the Court concludes the co-location proviso contained in the Montana General Appropriations Act of 1985 adds an impermissible condition of eligibility for federal funding under the Public Health Service Act, in violation of the Supremacy Clause. Accordingly, the proviso is unconstitutional. Because there are no genuine issues of material fact and plaintiffs are entitled to judgment as a matter of law, the Court must grant plaintiffs' motion for summary judgment. Furthermore, because the Court's decision is dispositive of the dispute, the related claims are not discussed. Therefore,

IT IS ORDERED that plaintiffs' motion for summary judgment is granted and defendants' motions for summary judgment or to dismiss are denied.

IT IS FURTHER DECLARED that the co-location proviso of the Montana General Appropriations Act of 1985, to-wit: "Funds appropriated for family services are contingent upon the recipient providing such services in a physical plant that does not contain an abortion clinic or facility that performs abortions", violates the Supremacy Clause of the United States Constitution and is therefore unconstitutional.

IT IS FURTHER ORDERED that the final pretrial conference set for February 14, 1986, and the non-jury trial set for February 24, 1986, are hereby vacated.

The Clerk is directed to enter judgment for plaintiffs and against defendants.

The Clerk is further directed forthwith to notify counsel for the respective parties of the making of this order.