**Vernon HOWARD, Plaintiff,**

v.

**CITY OF BURLINGAME, Defendant.**

**No. C–87–5329 EFL.**

United States District Court,
N.D. California.

Aug. 29, 1989.

Harold D. Caplener, San Jose, Cal., for plaintiff.

Natalie E. West, Meyers, Nave, Riback & West, San Leandro, Cal., for defendant.

## ORDER

LYNCH, District Judge.

This case is before the Court on plaintiff's motion for reinstatement of his

eighth claim for relief. Plaintiff's motion is denied for the reasons stated below.

FACTS

Plaintiff is a resident of the City of Burlingame and an amateur or "ham" radio operator licensed by the Federal Communications Commission ("FCC"). He wished to construct a retractable antenna tower on his property measuring twenty-one feet high when retracted and fifty-one feet high when fully extended. In June of 1987, as required by local ordinance, plaintiff applied for a special permit authorizing the erection of an antenna exceeding twenty-five feet in height. Although the City Planning Commission approved the application, the City Council subsequently denied it.

Plaintiff then filed suit in this Court asserting eight causes of action. In July of 1988, the Court ruled on the parties' cross-motions for summary judgment. At that time, the Court determined the thrust of plaintiff's lawsuit to be that the City's ordinances were preempted on their face and as applied by federal law regulating amateur radio use, as explained by a 1985 FCC declaratory ruling entitled "Federal Preemption of State and Local Regulations Pertaining to Amateur Radio Facilities." 101 F.C.C.2d 952, 50 Fed.Reg. 38,813 (1985) (hereinafter "PRB–1").

In an order dated July 29, 1988, 1988 WL 169074, this Court granted plaintiff's motion for summary judgment on his supremacy clause claims, finding that defendant was required to "reasonably accommodate Howard's radio activities and tailor [its] regulation to create the minimum interference with those activities *consonant with promotion of the legitimate local interest at stake.*" The Court granted defendant's motion for summary judgment on the second through eighth causes of action. Plaintiff's eighth cause of action asserted a violation of 42 U.S.C. section 1983:

Defendant City did, under color of state law, deny plaintiff his constitutional right to a fair hearing and deprive plaintiff of rights and privileges secured to him by the First and Fourteenth Amendments to the United States *Constitution* and by *statute.*

Plaintiff's Complaint, Para. 52 (emphasis added). The parties briefed and argued the eighth cause of action solely on the constitutional grounds. This Court found that neither the local regulations themselves nor their application to plaintiff violated any constitutional provisions other than the supremacy clause (plaintiff's first cause of action).

Subsequently, the City Council, weighing the time and expense that would be required to continue litigation against the other demands on the City's limited resources, approved plaintiff's application. *See*, Resolution No. 24–89, City Council of Burlingame, Exhibit A to Motion for Reconsideration.[1]

Plaintiff now seeks reinstatement of his eighth cause of action, arguing that his statutory, as opposed to constitutional, rights were violated. Apparently, at this late date and after having acquiesced for some time to the Court's constitutional interpretation of the eighth cause of action, plaintiff attempts to reinstate his section 1983 cause of action so that he may seek attorney fees under section 1988. Plaintiff has never before argued to the Court that his section 1983 claim asserts a violation of his statutory rights.

DISCUSSION

 Plaintiff claims that he holds a license pursuant to regulations promulgated under the enabling provisions of the Federal Communications Act of 1934, 47 U.S.C. section 151 et seq. ("FCA"). He asserts that his operator's license, granted pursuant to 47 C.F.R. sections 97.5 and 97.7, affords him various "rights," particularly the right to pursue world-wide communica-

---

1. Thus, there has been no final adjudication that plaintiff had a *right* to construct his antenna to the height he desired. Rather, this Court found he had a right to have his application reasonably accommodated and left it to the City Council to determine what the outcome of the reasonable accommodation would be. The City Council, rather than litigate, decided to grant the application without further study.

tion through the operation of an antenna tower at his licensed station at a height of fifty-one feet. This height is allowable under the relevant regulations, i.e., 47 C.F.R. section 97.45. He argues that the City's application of its zoning laws deprived him of this statutory and regulatory right and, therefore, he can proceed as an aggrieved party under section 1983.

42 U.S.C. section 1983 provides a cause of action for violation of a federal statute under color of state law. *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980); *Boatowners and Tenants Association v. Port of Seattle*, 716 F.2d 669, 671 (9th Cir.1983). Although the language of *Maine v. Thiboutot* appeared to grant broad rights, that language has been limited by subsequent cases. Section 1983 does not provide a remedy for every statutory violation. *See, Boatowners*, 716 F.2d at 671.

There are two exceptions to the application of section 1983 to remedy statutory violations: (1) where Congress has foreclosed private enforcement in the statute itself, and (2) where the statute at issue is not "the kind that created enforceable 'rights' under section 1983." *Middlesex County Sewerage Authority v. National Sea Clammers Assoc.*, 453 U.S. 1, 19, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981); *Boatowners*, 716 F.2d at 671.

### A. *First Exception: Comprehensive Scheme*

To determine whether the first exception, the existence of a comprehensive scheme, precludes resort to section 1983, courts look to the language of the statute and other indicia of congressional intent. *Coos Bay Care Center v. State of Oregon, Dept. of Human Resources*, 803 F.2d 1060 (9th Cir.1986), *vacated on other grounds*, 484 U.S. 806, 108 S.Ct. 52, 98 L.Ed.2d 17 (1987) (remanded for consideration of mootness issue). The focus is on the "comprehensiveness" of the statute's remedial scheme; specific and detailed procedures for administrative and judicial review are likely to foreclose or preclude recourse to section 1983.[2]

Once it has been established that the state has deprived a plaintiff of a "right" secured by federal statute (*see* discussion of second exception, *supra*), section 1983 provides a remedial cause of action unless the state actor demonstrates by express provision or other specific evidence from the statute itself that Congress intended to foreclose such private enforcement. *Wright v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987).

The parties agree that the statutory scheme in the case at bar does not preclude the possibility of private enforcement under section 1983 under the first exception. The statute provides absolutely no enforcement scheme for the type of rights asserted by plaintiff. Accordingly, it does not contain the type of comprehensive scheme which has been found to preclude a section 1983 action.

### B. *Second Exception: "Enforceable Rights"*

This Court must now determine whether the statute at issue creates "rights" enforceable under section 1983. Plaintiff contends that his right to operate a tower arises out of both the FCA and the regulations promulgated thereunder. Regulations have the force of law and can give rise to rights enforceable under section 1983. *Wright v. Roanoke*, 479 U.S. 418, 431, 107 S.Ct. 766, 775, 93 L.Ed.2d 781 (1987).

In determining whether statutes and/or regulations create federal rights enforceable under section 1983, the key to the inquiry is the intent of the legislature. *Id.* at 433, 107 S.Ct. at 775. The Ninth Circuit has pointed out that there are three different approaches which have been taken in making this determination. *Boatowners*,

---

**2.** *See, Wright v. Roanoke*, 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1986) (Brooke Amendment to United States Housing Act did not provide for private enforcement and did not preclude sec-

tion 1983 action); *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984) (Education of the Handicapped Act's administrative remedies preclude section 1983 action).

716 F.2d at 671–72. The first focuses on the existence of a jointly operated federal-state program. The second focuses on the nature of the rights asserted and requires that the rights asserted be in the nature of civil or personal rights, "including fundamental human, highly personal rights." The third, that adopted by the Ninth Circuit, uses the *Cort v. Ash* test for determining if a federal right has been created.

The Ninth Circuit is consistent with the Supreme Court in borrowing from the analysis established in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), for determining whether a private right of action in a statute exists. *See, Wright v. Roanoke*, 479 U.S. at 433, 107 S.Ct. at 775; *Boatowners*, 716 F.2d at 672 (explaining the difference in analysis between section 1983 and private right of action under a statute). In particular, the first prong of the *Cort v. Ash* test concerns the creation of a federal right. The Court must determine: (1) is plaintiff a member of the class for whose *especial* benefit the statute was enacted, and (2) did Congress *intend* to confer federal rights upon those beneficiaries. *Id.* In determining Congressional intent, the Court looks to the language of the statute. *Smith v. Kirk*, 821 F.2d 980, 982 (4th Cir.1987).

### 1. *Does the Federal Communications Act Create a Specially Benefitted Class of Ham Radio Operators?*

The Ninth Circuit has held that the special benefit test is satisfied where the statute places "unmistakable focus on the benefitted class." *Boatowners*, 716 F.2d at 673, n. 5 (citing *Limongelli v. Postmaster General*, 707 F.2d 368, 371 (9th Cir.1983)). In making this determination, courts may look to the language and stated purpose of

the legislature and the legislative history of the statute.[3]

The purpose of the FCA is specifically set forth:

For the purpose of regulating interstate and foreign commerce in communication by wire and radio so as to make available, so far as possible, to all the people of the United States a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges, for the purpose of the national defense, for the purpose of promoting safety of life and property through the use of wire and radio communication, and for the purpose of securing a more effective execution of this policy by centralizing authority heretofore granted by law to several agencies and by granting additional authority with respect to interstate and foreign commerce in wire and radio communication, there is created a commission to be known as the 'Federal Communications Commission', which shall be constituted as hereinafter provided, and which shall execute and enforce the provisions of this chapter.

47 U.S.C. sec. 151.

The above policy statement makes it clear that the *public* interest, as opposed to any one group of operators' interest, is intended to be furthered by the FCA. Radio operators, and specifically, ham radio operators are mentioned nowhere in the policy statement.

Section 303 of the FCA sets forth the powers and duties of the Commission, which are, in relevant part to: (1) classify radio stations, (2) prescribe the nature of the service to be rendered by each class of licensed stations and each station within

---

**3.** For instance, in *Boatowners,* the Ninth Circuit found that the stated purpose of the River and Harbor Improvements Act was to benefit the general public through improved navigation and enhanced commerce. Therefore, pleasure craft owners who claimed that a publicly owned marina imposed unreasonable rates for moorage in violation of the Act were found not to be members of a class intended to be specially benefitted and thus had no enforceable rights under section 1983.

On the other hand, the Supreme Court found that, in light of the mandatory language of the statute, the intent to benefit individual tenants under the Brooke Amendment to the United States Housing Act was undeniable. Thus, plaintiffs could sue under section 1983 for a violation of the mandatory minimum rent requirements.

any class, (3) regulate the kind of apparatus to be used, (4) "study new uses for radio, provide experimental uses of frequencies, and generally encourage the larger and more effective use of radio *in the public interest*," (5) have authority to prescribe the qualifications of station operators, to classify them according to the duties to be performed, to fix the forms of such licenses, and to issue them to persons who are found to be qualified by the Commission. 47 U.S.C. sec. 303 (emphasis added).

Subchapter III of the FCA sets forth special provisions relating to radio. At 47 U.S.C. section 301, the FCA provides:

It is the purpose of this chapter, among other things, to maintain the control of the United States over all the channels of radio transmission; and to provide for the use of such channels, but not the ownership thereof, by persons for limited periods of time, under licenses granted by Federal authority, and *no such license shall be construed to create any right, beyond the terms, conditions, and periods of the license.* No person shall use or operate any apparatus for the transmission of energy or communications or signals by radio ... except under and in accordance with this chapter and with a license in that behalf granted under the provisions of this chapter. (Emphasis added).

Thus, the FCA grants the FCC the authority to classify, license, and otherwise regulate the operation of ham radios. Again, this authority is granted for the purpose of furthering the public interest. In furthering the public interest, the FCC may grant licenses to individuals who have limited privileges arising out of that grant. The FCA specifically provides that the rights of granted licensees are not unlimited and that no license shall be construed to create any right beyond the terms, conditions and periods of the license. 47 U.S.C. sec. 301.

Plaintiff points to the regulations promulgated pursuant to the FCA which provide specifics regarding licensing authority and towers. Again, the Court notes the policy language set forth in the regulations:

Basis and purpose.

The rules and regulations in this part are designed to provide an amateur radio service having a fundamental purpose as expressed in the following principles:

(a) Recognition and enhancement of the value of the amateur service to the public as a voluntary noncommercial communication service, particularly with respect to providing emergency communications.

(b) Continuation and extension of the amateur's proven ability to contribute to the advancement of radio art.

(c) Encouragement and improvement of the amateur radio service through rules which provide for advancing skills in both the communication and technical phases of the art.

(d) Expansion of the existing reservoir within the amateur radio service of trained operators, technicians, and electronic experts.

(e) Continuation and extension of the amateur's unique ability to enhance international good will.

47 C.F.R. sec. 97.1 (1988). This language, perhaps even more than the statute itself, focuses on the public interest served by the encouragement of ham radio operation, rather than the rights or privileges bestowed upon individual operators for their private benefit.

In light of the statutory language of the FCA and the applicable regulations, the Court finds that there is no evidence of Congressional intent to create a specially benefitted class of ham radio operators as required by the analysis of *Boatowners.* This conclusion is consistent with the Supreme Court's pronouncement that "[t]he Communications Act of 1934 did not create new private rights. The purpose of the Act was to protect the public interest in communications." *Scripps–Howard Radio v. FCC,* 316 U.S. 4, 14, 62 S.Ct. 875, 882, 86 L.Ed. 1229 (1941) (radio station sued to set aside license to competing radio station). The Supreme Court has further stated that "[i]n granting or withholding permits for

the construction of stations, and in granting, denying, modifying or revoking licenses for the operations of stations, 'public convenience, interest, or necessity' was the touchstone for the exercise of the Commission's authority." *FCC v. Pottsville Broadcasting Co.*, 309 U.S. 134, 137–38, 60 S.Ct. 437, 438–39, 84 L.Ed. 656 (1940) (court can grant a writ of mandamus when FCC is erroneous in its application of law but court cannot require FCC to prioritize plaintiff, as FCC must act at all times in the public interest). *See also, Comtronics, Inc. v. Puerto Rico Telephone Co.*, 409 F.Supp. 800, 812 (D.Puerto Rico 1975), *aff'd*, 553 F.2d 701 (1st Cir.1977) (licensee under FCA does not acquire a property right for section 1983 purposes).

Thus, in conclusion, the Court finds that Congress did not intend to create a specially benefitted class of amateur radio operators.

### 2. *Did Congress Intend to Confer Rights on Plaintiff?*

The second prong of the *Cort v. Ash* test asks whether Congress intended to confer enforceable rights on plaintiff. The Court looks to whether the statute is phrased in mandatory rather than precatory terms. *Wright v. Roanoke*, 479 U.S. at 433, 107 S.Ct. at 775. The Court acknowledges that this prong of the analysis is in many ways similar to the first prong of the analysis, i.e., whether there is evidence of Congressional intent to bestow a benefit upon plaintiff.

The "right" plaintiff attempts to enforce can be described in various ways. To the extent it is argued that plaintiff has an absolute right to build his proposed tower as long as it complies with federal law, this argument has been soundly rejected by the FCC itself in PRB-1, which clearly states that the right to build a tower must bend in

the face of local land use regulations which "accommodate reasonably amateur communications, and ... represent the minimum practicable regulation to accomplish the local authority's legitimate purpose." PRB-1 at 10. There is no evidence in the statute or the regulations promulgated thereunder from which the Court can imply that Congress intended to confer upon plaintiff an absolute right to build his tower. Therefore, to the extent that plaintiff argues he has an absolute right to pursue his craft free of local interference, the Court finds that he has no such right.

At most, plaintiff has a right to have the City Council attempt to reasonably accommodate his proposed construction.[4] While the FCA itself includes no provisions for radio antennae height, it is clear that Congress intended to promote the use of amateur radio equipment and that effective use of such equipment is of national concern. The FCA and regulations promulgated thereunder express an intent to promote this national interest through a system of federal regulation. In establishing such a regulatory scheme, the privileges and responsibilities of certain groups of radio operators were defined. Plaintiff seizes upon this delineation of privileges as creating the basis for federally protected rights.

The regulations provide for specific privileges to be granted ham radio operators if they satisfy various regulatory criteria. A qualified amateur operator may construct a tower of up to two hundred feet in height before being required to seek prior approval from the FCC. 47 C.F.R. sec. 97.45. Contrary to plaintiff's view of this regulation, the Court does not see this provision as creating an enforceable right to construct a two hundred foot tower. Plaintiff is a licensee under federal law only so long as he complies with the extensive requirements of the regulations and only for the limited purposes specified in his license. Plaintiff may not seize upon language in

---

**4.** As noted earlier, there has been no final adjudication of what "reasonable accommodation" would require in this case. The City of Burlingame decided not to pursue the litigation and granted plaintiff's application without further study. Without ruling on the merits of plaintiff's application, the Court reiterates that this case calls only for reasonable accommodation, not absolute accommodation. Thus, it is likely that compromise would have been required on both sides. The end result may have been drastically different from that proposed by plaintiff—for instance, the City may have been able to deny plaintiff's application consistent with its duty to reasonably accommodate.

federal regulations and elevate that language into a grant of individual rights greater than that contemplated by the enabling statute itself. "An administrative regulation ... cannot create an enforceable section 1983 interest not already implicit in the enforcing statute." *Smith v. Kirk*, 821 F.2d at 984 (quoting *Wright*, 479 U.S. at 437, 107 S.Ct. at 777 (dissenting opinion)).

This Court agrees with Justice O'Connor's sensible and well-reasoned dissent in *Wright*.[5] Justice O'Connor was troubled that, once it has been found that a statute creates some enforceable right, *any* regulation adopted within its purview may be read as creating section 1983 rights, regardless of what Congress contemplated in passing the statute. Thus, an agency's "frequently changing views on how best to administer [its program] becomes the focal point for the creation and extinguishment of federal 'rights.'" *Wright*, 479 U.S. at 438, 107 S.Ct. at 778. This result would be particularly inappropriate in this case and the FCC's regulations regarding the operation of amateur radios should not be given talismanic effect. The asserted "right" to be "reasonably accommodated" is too vague and amorphous to be considered enforceable through section 1983. *See, Wright*, 479 U.S. at 431–32, 107 S.Ct. at 775 (where regulations specifically set out guidelines for public housing authorities to follow in administering a federally-funded program, the benefits are sufficiently specific to qualify as enforceable rights).

Defendant's failure to give due consideration to the federal interest in amateur radio operation was found to have constituted a violation of the supremacy clause. However, the Court finds that there is no evidence of Congressional intent to create a federal right to operate a radio to its optimum capacity enforceable under section 1983. The Court finds insufficient evidence of Congressional intent to impose such a burden on local entities, who are in no way responsible for or involved in the enforcement of the FCA.

This conclusion is not to say that a licensed ham radio operator is powerless in all circumstances to protect his interest in effectively operating his equipment. For instance, plaintiff successfully proceeded under the supremacy clause to protect his interest in operating a tower. In addition, plaintiff points to several cases referring to operators' "rights" and allowing them to pursue actions under the FCA. The District of Columbia Circuit has held that a licensed operator may intervene in a decision of the FCC to grant a competing operator a license within the statutory framework of the FCA and that such a decision is subject to judicial review. *Yankee Network v. FCC*, 107 F.2d 212 (D.C.Cir.1939). The basis for the *Yankee Network* decision was that a licensee gains some rights as a result of being licensed. Again, in *L.B. Wilson, Inc. v. FCC*, 170 F.2d 793 (D.C.Cir. 1948), it was held that an existing licensee has standing to challenge a de facto modification of its license by the granting of a competing license, again recognizing that certain protected rights attach to an operator's license.

However, the fact that a licensee may acquire an interest protected through an action against the FCC consistent with the statutory framework, does not mean that plaintiff has an equal right to proceed against a third party for damages under section 1983. The Court is unable to detect any Congressional intent to confer such broad rights on licensees.

SUPREMACY CLAUSE

■ Although plaintiff denies it, in essence the instant motion attempts to reinstate a claim that defendant has violated the supremacy clause, thus giving rise to a section 1983 cause of action. Plaintiff seems to assert that his victory under his first cause of action (federal preemption) is the basis for finding a section 1983 violation. Plaintiff's only victory is essentially a supremacy clause victory.

In order to proceed on a statutory violation under section 1983, plaintiff must identify an enforceable federal right. At best, plaintiff can point to a right to have his permit considered in accordance with PRB–

---

5. Justice O'Connor's opinion on this issue does not contradict the majority opinion, but reaches an issue the majority was not required to address.

1.[6] This is not a typical case arguing a deprivation of a statutory right under section 1983, in which a local body has failed to properly distribute benefits required by a joint state-federal grant program. *See, e.g., Wright,* 479 U.S. 418, 107 S.Ct. 766 (suit to challenge public housing authority's surcharge for utilities as being in excess of that allowable under HUD regulations). Here, defendant did not withhold a right granted by the federal government, refuse to grant a benefit it had contracted with the federal government to bestow upon plaintiff, or erroneously carry out its powers and responsibilities created by a federal grant program. Defendant has no enforcement responsibility under the FCA. The City's error in this case was only that, in applying its legitimate local land use regulations, it failed to reasonably accommodate federal concerns expressed in the FCA. This can be nothing other than a violation of the supremacy clause.

The Ninth Circuit has held that the supremacy clause does not create individual rights and therefore it cannot create a cause of action under section 1983. *White Mountain Apache Tribe v. Williams,* 810 F.2d 844, 848–52 (9th Cir.1984), *cert. denied,* 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 990 (1987). This is at least true in a case such as this, where the preemption claim is based on federal occupation of the field or conflict with federal goals, as opposed to direct conflict with explicit provisions of federal law. *Id.*[7]

The prevailing law in the Ninth Circuit, and the law which prevailed when the Court granted summary judgment on plaintiff's section 1983 claim, precludes plaintiff from proceeding under section 1983 for a supremacy clause violation. Thus, to the extent plaintiff argues that defendant has infringed upon his interests in an area in which the federal government has occupied the field in violation of the supremacy clause, his claim is not cognizable under section 1983.

*CONCLUSION*

For the reasons stated above, and good cause appearing, plaintiff's motion for reinstatement of his eighth cause of action is denied.

IT IS SO ORDERED.

---

6. In his moving papers he claims that "[o]ne of his rights and privileges has been confirmed by this Court as stated in its Order. In particular, Mr. Howard has a right and privilege that local regulations be applied consistent with federal law as reflected in PRB–1.... This Court found and concluded that the City failed to apply its regulations consistent with federal law." Plaintiff's Motion for Reconsideration at 5.

7. The Supreme Court recently granted certiorari on this issue. *Golden State Transit Corp. v. City of Los Angeles,* 857 F.2d 631, 636 (9th Cir.1988), *cert. granted,* — U.S. —, 109 S.Ct. 1117, 103 L.Ed.2d 180 (1989). Certiorari was granted limited to the following question: "Whether in the absence of a direct violation of a federal statute, an allegation that a state statute is preempted by a federal statute is cognizable under 42 U.S.C. section 1983." *Id.*