730 P.2d 840

**CENTRAL MACHINERY COMPANY,
an Arizona corporation,
Plaintiff-Appellee,**

v.

**STATE of Arizona,
Defendant-Appellant.**

No. 1 CA–CIV 7779.

Court of Appeals of Arizona,
Division 1, Department D.

June 27, 1985.

Rodney B. Lewis, Sacaton, for Central Machinery Company.

Robert K. Corbin, Atty. Gen. by Anthony B. Ching, Sol. Gen., Phoenix, for State of Arizona.

MEYERSON, Judge.

In *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the United States Supreme Court held that 42 U.S.C. § 1983 provides a cause of action to enforce substantive rights granted by federal statutes. The issue in this case is whether the Indian trader statutes, 25 U.S.C. §§ 261–64, create such rights thereby entitling plaintiff-appellee Central Machinery Company (Central Machinery) to recover attorney's fees under 42 U.S.C. § 1988.[1] We hold that substantive rights are created by the Indian trader statutes and therefore affirm the trial court's judgment granting fees to Central Machinery.

## I. BACKGROUND

This dispute began in 1973 when Central Machinery sold farm tractors to Gila River Farms, an enterprise of the Gila River Indian Tribe (Tribe). The State of Arizona imposed a transaction privilege tax on the sale of the tractors. The tax was passed on to Gila River Farms. Central Machinery paid the tax under protest and initiated state administrative proceedings to claim a refund.

Central Machinery's claim ultimately reached the United States Supreme Court. *Central Machinery Co. v. Arizona State Tax Comm'n*, 448 U.S. 160, 100 S.Ct. 2592, 65 L.Ed.2d 684 (1980). Relying upon its earlier decision in *Warren Trading Post Co. v. Arizona State Tax Comm'n*, 380 U.S. 685, 85 S.Ct. 1242, 14 L.Ed.2d 165

---

1. The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, authorizes reasonable attorney's fees to the prevailing party in actions brought under certain statutes, including 42 U.S.C. § 1983.

(1965), the Court held that the Indian trader statutes preempted Arizona's imposition of sales tax on the transaction.

On remand, Central Machinery attempted to recover attorney's fees under 42 U.S.C. § 1988. It argued that its preemption claim was cognizable under 42 U.S.C. § 1983 thereby entitling it to an award of fees. The superior court granted fees to Central Machinery [2] and defendant-appellant State of Arizona has filed this appeal.

## II. 42 U.S.C. § 1983

The Civil Rights Act of 1871, 42 U.S.C. § 1983, establishes a cause of action on behalf of any party who has been injured, under color of law, through the deprivation of any "rights, privileges, or immunities secured by the Constitution and laws" of the United States. The question before the Supreme Court in *Maine v. Thiboutot* was "whether the phrase 'and laws,' as used in § 1983, means what it says, or whether it should be limited to some subset of laws." 448 U.S. at 4, 100 S.Ct. at 2504. The Supreme Court rejected the contention that the phrase "and laws" should be read as limited to civil rights or equal protection laws. The Court held that 42 U.S.C. § 1983 encompassed claims based on purely statutory violations of federal law and further concluded that the attorney's fees provisions of 42 U.S.C. § 1988 were therefore applicable.

In *Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), the Supreme Court indicated in dictum that two factors may limit the existence of a cause of action under § 1983. First, the statute must provide substantive rights to those who seek to bring an action to enforce the statute. Second, the Court indicated that there might be no remedy under § 1983 if any express remedy contained in the statute is exclusive. The second limitation was expanded upon in *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). In that decision, the Court found that expressly created statutory remedies in two federal statutes manifested congressional intent that a supplemental remedy under 42 U.S.C. § 1983 was precluded.

The Indian trader statutes make no reference to any statutory remedy. Therefore, we are not concerned in this decision with the second limiting factor enunciated by the Supreme Court. Rather, we are concerned with the first limitation, namely whether the Indian trader statutes create enforceable rights.

## III. INDIAN TRADER STATUTES

Comprehensive federal regulation of Indian traders has existed from 1790 until the present day. The Commissioner of Indian Affairs is vested with the "sole power and authority to appoint traders to the Indian tribes" and to specify the "kind and quantity of goods and the prices at which such goods shall be sold to the Indians." 25 U.S.C. § 261. Pursuant to the authority of the Indian trader statutes, the Commissioner of Indian Affairs has promulgated detailed regulations prescribing the manner in which trade shall be carried on with Indians. *See generally* 25 C.F.R. §§ 140.1, –.26 (1984). In *Warren Trading Post Co.*, the United States Supreme Court held that the Indian trader statutes and the regulations promulgated thereunder preempted the ability of the State of Arizona to impose a sales tax upon a company engaged in retail trading business with Indians on the Arizona part of the Navajo Indian Reservation. In *Central Machinery Co. v. Arizona State Tax Comm'n*, the Court extended its holding in *Warren Trading Post Co.* to a situation involving an Indian trader who was not licensed and who did not have a permanent place of business on the reservation.

The Supreme Court's characterization of the Indian trader statutes in *Warren Trading Post Co.* is determinative of this appeal:

2. The parties agreed that Gila River Farms would bear the costs and legal fees throughout the litigation and that any recovery of fees would be transmitted to it.

We think the assessment and collection of this tax would to a substantial extent frustrate the evident *congressional purpose of ensuring that no burden shall be imposed upon Indian traders for trading with Indians* on reservations except as authorized by Acts of Congress or by valid regulations promulgated under those Acts. This state tax on gross income would put financial burdens on appellant or the Indians with whom it deals ... and could thereby disturb and disarrange the *statutory plan Congress set up in order to protect Indians against prices deemed unfair or unreasonable by the Indian Commissioner.*

380 U.S. at 690–91, 85 S.Ct. at 1245 (emphasis added). The Court's description of the Indian trader statutes reflects its conclusion that Congress' intent in passing the statutes was to "protect Indians against prices deemed unfair or unreasonable by the Indian Commissioner." We conclude that the Indian trader statutes therefore establish enforceable rights and thus fit within the phrase "and laws" contained in 42 U.S.C. § 1983. *See Chase v. McMasters,* 573 F.2d 1011 (8th Cir.1978), *cert. denied,* 439 U.S. 965, 99 S.Ct. 453, 58 L.Ed.2d 423 (1978).

## IV. ANALYSIS

We believe that our conclusion is also supported by the decision of the Ninth Circuit Court of Appeals in *White Mountain Apache Tribe v. Williams,* No. 81–5348 (9th Cir. Feb. 7, 1984), *rehearing granted,* (April 25, 1984). In that case, the court held that preemption of Arizona state taxes by a federal law regulating the harvest and sale of tribal timber did not create rights enforceable under § 1983. The court's reasoning combined with the interpretation of

the Indian trader statutes given by the Supreme Court in *Warren Trading Post Co.* requires that we reach the contrary result in the present case.

In *White Mountain Apache Tribe,* the court noted that the "availability of a § 1983 cause of action for state violations of federal statutory law depend[s] upon congressional intent in passing the statute at issue." Slip op. at 14. The court recognized that a preemption claim under a federal statute may give rise to a § 1983 cause of action. *Id.* at 16. *But cf. Gould, Inc. v. Wisconsin Dept. of Industry, Labor and Human Relations,* 750 F.2d 608 (7th Cir. 1984), *review granted,* 471 U.S. 1115, 105 S.Ct. 2356, 86 L.Ed.2d 257 (1985). As the court noted, the question becomes one of congressional intent.[3]

In light of *Warren Trading Post Co.,* we must necessarily conclude that the Indian trader statutes do evidence a congressional intent to create enforceable rights. As explained by the United States Supreme Court, the purpose behind these statutes is to "protect Indians against prices deemed unfair or unreasonable by the Indian Commissioner." 380 U.S. at 691, 85 S.Ct. at 1245. We view this statement as an express indication by the Supreme Court that Congress intended that for the benefit and protection of Indians, the tribes were entitled to the right to be free from state taxation on their transactions with traders.

The State of Arizona relies heavily on *Consolidated Freightways Corp. v. Kassel,* 730 F.2d 1139 (8th Cir.1984), *cert. denied,* 469 U.S. 834, 105 S.Ct. 126, 83 L.Ed.2d 68 (1984). In that decision, the plaintiff had been successful in invalidating Iowa's ban on 65–foot twin trailer trucks

---

**3.** Despite a persuasive dissent, a majority of the court found that the central purpose of the federal law regulating the harvest of timber on Indian reservations was merely to grant to the Secretary of the Interior authority to regulate the harvest and sale of the tribe's own timber. Thus, the court concluded that the statute created no new rights. The court further concluded that Congress' purpose in promoting tribal self-government likewise gave rise to no rights cognizable under § 1983. The court viewed the

federal statute as allocating the power to tax the timber activities among different sovereigns and that the distribution of such powers between a state and an Indian tribe was outside the scope of § 1983.

The dissent concluded that the federal law reflected a congressional intention to benefit specially Indian tribal timberland owners and to confer federal rights upon them. The dissent appears to us to have the better argument.

under the commerce clause. The plaintiff then sought fees alleging that the commerce clause claim was cognizable under § 1983. The court rejected the request finding that the commerce clause did not grant enforceable rights but rather allocated power between the state and federal governments. *Id.* at 1144. Thus, the decision is not at all analogous because here we are concerned with a supremacy clause claim predicated upon a federal law which has as its avowed purpose the protection of Indians in their business relationships with traders.

Our holding is also consistent with the Ninth Circuit decision in *Boatowners and Tenants Ass'n v. Port of Seattle,* 716 F.2d 669 (9th Cir.1983). In that decision, the court rejected the contention that the plaintiffs had a § 1983 claim under the River and Harbor Improvements Act. The court found that the purpose of the act was to "improve navigation, enhance commerce, and reduce vehicle-vessel traffic problems, *all to the benefit of the general public."* *Id.* at 673 (emphasis added). The court concluded that there was no "evidence whatsoever of an intent" to create "any special benefit" for the class of pleasure craft owners. *Id.* at 673–74. The River and Harbor Improvements Act can be easily contrasted with the Indian trader statutes by virtue of the Supreme Court's clear characterization of Congress' intent under the Indian trader statutes to benefit and protect Indians in their dealings with traders.

The Ninth Circuit Court of Appeals in *White Mountain Apache Tribe* acknowledges that claims under the supremacy clause may involve rights enforceable under § 1983. For the foregoing reasons, we hold that such a claim has been presented

in this matter and we therefore affirm the ruling of the superior court.[4]

GRANT and HAIRE, JJ., concur.

---

**4.** The State's final argument can be easily dismissed. The State argues that only Congress, not the courts, can authorize attorney's fees. *Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Because the Indian trader statutes make no reference to fees, the State alleges that

a fee award is impermissible. But Congress has expressly provided for an award of fees in § 1983 suits. 42 U.S.C. § 1988. We have determined that Central Machinery's claim is one properly brought under § 1983 and therefore the provisions of 42 U.S.C. § 1988 are applicable.