730 P.2d 843

**CENTRAL MACHINERY COMPANY, an Arizona corporation, Plaintiff-Appellee,**

v.

**STATE of Arizona, Defendant-Appellant.**

**No. 18493–PR.**

Supreme Court of Arizona, En Banc.

Dec. 12, 1986.

---

Rodney B. Lewis, Sacaton, for plaintiff-appellee.

Robert K. Corbin, Atty. Gen., Anthony B. Ching, Sol. Gen., Phoenix, for defendant-appellant.

HAYS, Justice.

The state petitioned this court to review an opinion of the court of appeals that upheld the trial court's award of attorney's fees under 42 U.S.C. § 1988 in favor of Central Machinery Company. We granted review and have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), A.R.S. § 12–120.-

24 and Rule 23, Ariz.R.Civ.App.P. 17A A.R.S.

We granted review of the following two issues: (1) whether the court of appeals, by finding that Gila River Farms would bear legal fees throughout the litigation and that any recovery of fees by Central Machinery would be transmitted to Gila River Farms, improperly conferred standing on Central Machinery to bring a cause of action under 42 U.S.C. § 1983; (2) whether the original tax refund claim in state court is a claim within federal Civil Rights Act of 1871, 42 U.S.C. § 1983, and thereby support an award of attorney's fees pursuant to 42 U.S.C. § 1988.

This litigation has a long history. In 1974, Central Machinery Company sold a number of tractors to Gila River Farms, an enterprise of the Gila River Indian Community. Arizona state sales tax of $2,916.62 was included in the price. Gila River Farms paid the invoice amount with the understanding that if Central Machinery was not liable for the tax, the company would refund any amount it recovered from the state to Gila River Farms.

Central Machinery paid the tax under protest and, after exhausting administrative remedies, filed an action in superior court to recover the tax. *See* A.R.S. § 42–1339(B).[1] The trial court ruled that Central Machinery was not liable for the tax. The state appealed. This court reversed. *State v. Central Machinery Co.*, 121 Ariz. 183, 589 P.2d 426 (1978). Central Machinery subsequently appealed the decision to the United States Supreme Court. The Court held that the Indian trader statutes, 25 U.S.C. §§ 261–264, preempted Arizona's imposition of state sales tax on the transaction.[2] *Central Machinery Co. v.*

---

1. Repealed by laws 1985, ch. 366, § 31 (eff. July 1, 1986). *See,* now, A.R.S. § 42–124.

2. **§ 261. Power to appoint traders with Indians**

The Commissioner of Indian Affairs shall have the sole power and authority to appoint traders to the Indian tribes and to make such rules and regulations as he may deem just and proper specifying the kind and quantity of

goods and the prices at which such goods shall be sold to the Indians.

**§ 262. Persons permitted to trade with Indians**

Any person desiring to trade with the Indians on any Indian reservation shall, upon establishing the fact, to the satisfaction of the Commissioner of Indian Affairs, that he is a ·proper person to engage in such trade, be permitted to do so under such rules and regulations as the

*Arizona State Tax Comm'n,* 448 U.S. 160, 165–66, 100 S.Ct. 2592, 2596, 65 L.Ed.2d 684 (1980).

On remand, Central Machinery sought attorney's fees based on the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. The trial court awarded attorney's fees under this statute in the amount of $53,165 and the Arizona Court of Appeals affirmed the award. *Central Machinery Co. v. Arizona,* 152 Ariz. 131, 730 P.2d 840 (Ct.App.1985). The state petitioned this court. We reverse.

The state has raised several challenges to the decision below. First, the state contends that Central Machinery has no standing to bring a cause of action under § 1983. Second, even if standing was properly recognized, the state asserts that the Indian trader statutes do not support a claim cognizable under § 1983. The state claims that not only do the Indian trader statutes not create any "enforceable rights" in favor of either Central Machinery or the Indian tribe, but the trader statutes also contain exclusive remedies that preempt any § 1983 action. Finally, the state argues that, based on the facts of this case, neither the supremacy clause nor the commerce clause provides a constitutional basis for a § 1983 cause of action.

## I. STANDING

The state contends that Central Machinery is without standing because no agreement exists between Central Machinery and Gila River Farms whereby any attorney fees recovered under § 1988 would be paid back to Gila River Farms. The trial court, however, determined that such an agreement existed. On review, the court of appeals resolved this question in favor of Central Machinery.

The parties' Second Agreed Statement of Facts states:

> The Plaintiff has agreed with Gila River Farms that if *any monies are recovered* by the Plaintiff as a result of its action herein, *the Plaintiff will remit to Gila River Farms the monies so recovered* (emphasis added).

The state argues that "any monies" recovered cannot include attorneys fees and, therefore, Central Machinery has no standing to sue for recovery of the fees. The basis for the state's argument is that although the Second Agreed Statement of Facts was signed by the attorneys in June 1976, § 1988 did not become effective until October 19, 1976. The existence or nonexistence of § 1988 does not, though, affect the validity of the agreement. The parties were capable of agreeing that all monies recovered would be turned over to Gila River Farms without having to anticipate all possible sources of monies recoverable by Central Machinery. Furthermore, Central Machinery admitted in a response to the state's motion for reconsideration that "the award of ... attorney's fees ... will

Commissioner of Indian Affairs may prescribe for the protection of said Indians.

**§ 263 Prohibition of trade by President**

The President is authorized, whenever in his opinion the public interest may require the same, to prohibit the introduction of goods, or of any particular article, into the country belonging to any Indian tribe, and to direct all licenses to trade with such tribe to be revoked, and all applications therefor to be rejected. No trader to any other tribe shall, so long as such prohibition may continue, trade with any Indians of or for the tribe against which such prohibition is issued.

**§ 264 Trading without license; white persons as clerks**

Any person other than an Indian of the full blood who shall attempt to reside in the Indian country, or on any Indian reservation, as a trader, or to introduce goods, or to trade therein, without such license, shall forfeit all merchandise offered for sale to the Indians or found in his possession, and shall moreover be liable to a penalty of $500. *Provided,* That this section shall not apply to any person residing among or trading with the Choctaws, Cherokees, Chickasaws, Creeks, or Seminoles, commonly called the Five Civilized Tribes, residing in said Indian country, and belonging to the Union Agency therein: And provided further, That no white person shall be employed as a clerk by any Indian trader, except such as trade with said Five Civilized Tribes, unless first licensed so to do by the Commissioner of Indian Affairs, under and in conformity to regulations to be established by the Secretary of the Interior.

be disbursed to Gila River Farms in accordance with the Agreed Statement of Facts." This admission is a binding construction of the agreed statement of facts and is sufficient to give Central Machinery standing to bring the motion for attorney's fees. We hold that Central Machinery has standing to bring this motion in its own right and is therefore a proper party to this suit.

The state also makes a quasi-standing argument. According to the state, even if Gila River Farms was eligible for an award pursuant to § 1988, Central Machinery still could not prevail. The state argues that Central Machinery is not eligible for attorney's fees because the Indian trader statutes were designed to benefit Indians and not Indian traders. The state's argument is simply an assertion that Central Machinery's standing to bring the original action does not translate into "standing" for a related § 1988 motion. We reject this argument because the United States Supreme Court has held that § 1988 is not limited to any particular subclass of § 1983 actions. *Maher v. Gagne*, 448 U.S. 122, 128, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980), relying on *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). Central Machinery had standing to prosecute the original action. If the original action was cognizable under § 1983, then attorney's fees should be awarded to Central Machinery.

## II. ATTORNEY'S FEES AWARD PURSUANT TO § 1988

Both parties agree that federal law controls any award of attorney's fees. Consequently, we only need determine whether attorney's fees were properly awarded under 42 U.S.C. § 1988. Section 1988 authorizes an award of attorney's fees in certain enumerated civil rights actions.

> In any action or proceeding to enforce a provision of sections 1981, 1982, *1983*, 1985, and 1986 of [Title 42], ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988 (emphasis added).

> Section 1983 creates civil liability for [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the *Constitution and laws*, ....

42 U.S.C. § 1983 (emphasis added).

■ Central Machinery argues that it is entitled to § 1988 attorney's fees because its original action for a tax refund is cognizable under § 1983. Although Central Machinery was the prevailing party in the underlying lawsuit, its successful claim was not brought pursuant to § 1983.[3] We

---

**3.** The issue of attorney's fees may be raised for the first time after remand of the appeal in which the plaintiff prevailed. *See, e.g., Bernstein v. Menard*, 728 F.2d 252, 253 n. 1 (4th Cir.1984), *construing White v. New Hampshire Dept. of Employment Sec.*, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982). § 1983 is a remedial statute that must be construed broadly in order to assist private plaintiffs who vindicate federal rights. *See Collins v. Chandler Unified School Dist.*, 644 F.2d 759, (9th Cir.), *cert. denied*, 454 U.S. 863, 102 S.Ct. 322, 70 L.Ed.2d 163 (1981), *quoting Dennis v. Chang*, 611 F.2d 1302, 1305 (9th Cir.1980). Moreover, several courts have allowed a motion for attorney's fees even though a § 1983 action was not proven or alleged in the original complaint. For example, In *Gumbhir v. Kansas State Bd. of Pharmacy*, 231 Kan. 507, 646 P.2d 1078 (1982), *cert. denied*, 459 U.S. 1103, 103 S.Ct. 724, 74 L.Ed.2d 950 (1983), a motion for assessment of costs "adequately pleaded a violation of ... civil rights under § 1983 to maintain a suit for attorney fees under § 1988, ..." even though the motion was based upon an earlier action alleging denial of constitutional rights, not a § 1983 action. *See Fairbanks Correctional Center v. Williamson*, 600 P.2d 743 (Alaska 1979) (sole mention of § 1983 in original complaint in parenthesis in the title of the complaint); *Harradine v. Bd. of Supervisors*, 73 A.D.2d 118, 425 N.Y.S.2d 182 (1980) (original complaint alleged violation of equal protection clause); *Boldt v. State*, 101 Wis.2d 566, 305 N.W.2d 133 (complaint alleging violation of due process clauses of the Wisconsin and United States Constitutions sufficient to plead § 1983 action in suit for attorney's fees pursuant to § 1988), *cert. denied*, 454 U.S. 973, 102 S.Ct. 524, 70 L.Ed.2d 393 (1981); *accord,*

must, therefore, now determine if the action for a tax refund was an action to secure "rights, privileges, or immunities secured by the Constitution and laws...." If Central Machinery's original action implicated either statutory or constitutional rights protected by § 1983, then the original award should be upheld. *Maher*, 448 U.S. at 128–29, 100 S.Ct. at 2574 (1980) (§ 1988 applies to all § 1983 violations).

## STATUTORY BASIS FOR § 1983 ACTION

Section 1983 provides a remedy for any deprivation, under color of state law, of rights created by the United States Constitution or federal statutes. Central Machinery's original claim was that Arizona could not tax a transaction between Central Machinery and the Indians because the Indian trader statutes had preempted the field of trading with Indians on reservations. Central Machinery was successful with this argument before the United States Supreme Court.

Unquestionably, then, Central Machinery's suit vindicated an interest protected by federal law. Central Machinery argues that *Maine v. Thiboutot, supra,* recognizes such interests as within the ambit of § 1983. In *Maine*, the Supreme Court held that the phrase "and laws" in § 1983 refers to any federal law and not just civil rights laws or equal protection laws. 448 U.S. at 6–7, 100 S.Ct. at 2505. Accordingly, *Maine* has been widely construed as authorizing § 1983 actions whenever a plaintiff was adversely affected by a violation of federal law under color of state law. *See, e.g., Maine,* 448 U.S. at 11, 100 S.Ct. at 2508 (Powell, J., dissenting) ("The Court holds today, almost casually, that 42 U.S.C. § 1983 creates a cause of action for deprivations under color of state law of any federal statutory right"); *In re Hauss-*

*man,* 96 A.D.2d 244, 468 N.Y.S.2d 375 (N.Y.App.Div.1983); Wartelle & Loudan, *Private Enforcement of Federal Statutes: The Role of the Section 1983 Remedy,* 9 Hast. Const. Law Quart. 487, 487 (1982) (*Maine* gave 42 U.S.C. § 1983 "an interpretation that, for the first time in the section's 110-year history, matched the breadth of its literal language"); Note, *The Application of Section 1983 to the Violation of Federal Statutory Rights—Maine v. Thiboutot,* 30 DePaul L.Rev. 651, 657 (1981) (court majority in *Maine* made expansive interpretation of § 1983).

We do not doubt that Justice Brennan's majority opinion in *Maine,* standing alone, would justify a finding that Central Machinery's original action was cognizable under § 1983:

> The question before us is whether the phrase "and laws," as used in § 1983, means what it says, or whether it should be limited to some subset of laws....
>
> Even were the language ambiguous, however, any doubt as to its meaning has been resolved by our several cases suggesting, explicitly or implicitly, that the § 1983 remedy broadly encompasses violations of federal statutory as well as constitutional law.

448 U.S. at 4, 100 S.Ct. at 2504. This broad language clearly would control the instant case where the state of Arizona's laws conflicted with federal laws designed to protect Indians. We believe, though, that both Central Machinery and the court of appeals rely too heavily on *Maine.*

The Supreme Court narrowed the reach of *Maine* in two subsequent landmark decisions. These decisions, *Middlesex County Sewage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), and *Pennhurst State*

---

*Consol. Freightways Corp. v. Kassel,* 730 F.2d 1139 (8th Cir.) (party alleging § 1983 violation, but prevailing on other grounds, eligible for attorney's fees if § 1983 would have been an appropriate basis for relief); *cert. denied,* 469 U.S. 834, 105 S.Ct. 126, 83 L.Ed.2d 68 (1984); *Jackson v. Inhabitants of Searsport,* 456 A.2d 852 (Me.) (§ 1988 award not limited to those cases where court actually "passed upon a party's section 1983 claim and ruled on it in that party's favor"), *cert. denied,* 464 U.S. 825, 104 S.Ct. 95, 78 L.Ed.2d 101 (1983). We do not believe that Central Machinery's failure to specifically allege a § 1983 cause of action in the original complaint should serve as a procedural barrier to the claim before us.

*School & Hosp. v. Haldeman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), establish two exceptions to the use of § 1983 to remedy federal statutory violations. It is these two exceptions, and not the broad holding of *Maine*, that are truly at issue in this case.

In *Sea Clammers*, the Supreme Court held that a federal statute containing comprehensive remedial provisions may "demonstrate congressional intent to preclude the remedy of suits under § 1983." 453 U.S. at 20, 101 S.Ct. at 2626. Thus, no cause of action will lie under § 1983 where federal statutes provide their own comprehensive remedy. In *Pennhurst*, the Court held that violation of federal law does not give rise to any cause of action unless Congress intended to vest enforceable rights in the injured persons. 451 U.S. at 27–28, 101 S.Ct. at 1545. Accordingly, a plaintiff may not enforce a federal statutory violation with § 1983 unless the statute creates enforceable rights.

▪ The state argues that both the exclusive remedy exception established by *Sea Clammers* and the enforceable rights exception set out in *Pennhurst* bar the award of attorney's fees to Central Machinery. First, the state contends that Congress has so comprehensively regulated the field of Indian trading that no § 1983 remedy exists and, therefore, no award of attorney's fees is available under § 1988. In *Sea Clammers*, the Court found a congressional intent to preclude a § 1983 action on the basis of "unusually elaborate enforce-

ment provisions." 453 U.S. at 13–15, 101 S.Ct. at 2623. The Federal Water Pollution Control Act at issue in *Sea Clammers* authorized the government agency and states to seek civil and criminal penalties, authorized any interested person to seek judicial review of agency action, and contained two separate private suit provisions. *Id.*[4]

The Indian trader statutes do not have similar provisions. In fact, a careful reading of the Indian trader statutes reveals no comprehensive remedial provisions. 25 U.S.C. § 264 admittedly does provide that any non-Indian who trades without a license "shall forfeit all merchandise offered for sale to the Indians or found in his possession, and shall moreover be liable to a penalty of $500...." Additionally, the Indian trader statutes do authorize administrative rule-making, *e.g.*, 25 U.S.C. § 262 ("Any person desiring to trade with the Indians on any Indian reservation shall ... be permitted to do so under such rules and regulations as the Commissioner of Indian Affairs may prescribe...."), that in turn could provide a remedial scheme. One forfeiture provision and the possibility of additional remedies, however, is hardly the type of exclusive remedy scheme contemplated by the Court in *Sea Clammers*. *See Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984) (although plaintiff may have had an alternative claim under 42 U.S.C. § 1983, § 1988 attorney's fees should not have been awarded because the plaintiff's case belonged entirely within the comprehensive procedures and guaran-

---

**4.** The Supreme Court summarized relevant provisions of the Federal Water Pollution Control Act:

These Acts contain unusually elaborate enforcement provisions, conferring authority to sue for this purpose both on government officials and private citizens. The FWPCA, for example, authorizes the EPA Administrator to respond to violations of the Act with compliance orders and civil suits. § 309, 33 U.S.C. § 1319. He may seek a civil penalty of up to $10,000 per day, § 309(d), 33 U.S.C. § 1319(d), and criminal penalties also are available, § 309(c), 33 U.S.C. § 1319(c). States desiring to administer their own permit programs must demonstrate that state officials possess adequate authority to abate vio-

lations through civil or criminal penalties or other means of enforcement. § 402(b)(7), 33 U.S.C. § 1342(b)(7). In addition, under § 509(b), 33 U.S.C. § 1342(b)(7) [sic]. In addition, under § 509(b), 33 U.S.C. § 1369(b), "any interested person" may seek judicial review in the United States courts of appeals of various particular actions by the Administrator, including establishment of effluent standards and issuance of permits for discharge of pollutants. Where review could have been obtained under this provision, the action at issue may not be challenged in any subsequent civil or criminal proceeding for enforcement. § 1369(b)(2).

*Sea Clammers*, 453 U.S. at 13, 101 S.Ct. at 2623 (footnotes omitted).

tees of the Education to the Handicapped Act (EHA); *Montauk-Caribbean Airways, Inc. v. Hope*, 784 F.2d 91 (2nd Cir.) (comprehensive enforcement scheme provided in Federal Aviation Act manifests congressional intent to foreclose an action under § 1983); *cert. denied*, — U.S. —, 107 S.Ct. 248, 93 L.Ed.2d 172 (1986); *accord Keaukaha-Panaewa Community Ass'n v. Hawaiian Homes Comm'n*, 739 F.2d 1467 (9th Cir.1984) (mere reservation of right to sue in statutory scheme is not a sufficiently comprehensive enforcement scheme to foreclose a § 1983 remedy).

The state also contends that the Indian trader statutes do not create enforceable rights as defined in *Pennhurst* and therefore do not give rise to a claim for § 1988 attorney fees. In *Pennhurst*, the plaintiff claimed that the Developmentally Disabled Assistance and Bill of Rights Act of 1975 (DDABRA) created "enforceable rights" in favor of the mentally retarded. 451 U.S. at 6, 101 S.Ct. at 1534. The Court disagreed, holding that because the DDABRA was designed only to assist states in their treatment of the mentally disabled through a "cooperative program of shared responsibilit[ies]" between the federal government and the states, it did not create enforceable rights. *Id.* at 22, 101 S.Ct. at 1542 (quoting *Harris v. McRae*, 448 U.S. 297, 309, 100 S.Ct. 2671, 2684, 65 L.Ed.2d 784 (1980)). Therefore, the *Pennhurst* Court concluded that it "need not reach the question whether there is a private cause of action ... under 42 U.S.C. § 1983 to enforce [the DDABRA]." 451 U.S. at 28 n. 21, 101 S.Ct.

at 1545 n. 21. *Sea Clammers* construed the decision in *Pennhurst* not to address a § 1983 issue as requiring a determination of "whether the statute at issue ... [is] the kind that create[s] enforceable 'rights' under § 1983." *Sea Clammers*, 453 U.S. at 19, 101 S.Ct. at 2626.

Courts applying *Pennhurst* have not arrived at a uniform definition of enforceable § 1983 "rights." *See generally Boatowners & Tenants Ass'n v. Port of Seattle*, 716 F.2d 669, 671 (9th Cir.1983) ("our review of cases from other circuits reveals divergent views of how broadly 'rights' should be construed"). Central Machinery vigorously asserts that because the Indian trader statutes were designed to specially benefit Indians, *see Warren Trading Post v. Arizona Tax Comm'n*, 380 U.S. 685, 690–91, 85 S.Ct. 1242, 1245–46, 14 L.Ed.2d 165 (1965), Indians possess "rights" enforceable in a 1983 action. Central Machinery relies heavily on the Ninth Circuit's use of the *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975), implied right-of-action test in § 1983 actions. The Ninth Circuit has stated that enforceable rights arise if the applicable statute confers rights for the special benefit of the class to which the plaintiff belongs. *Boatowners*, 716 F.2d at 672, *citing Cort, supra.*

We think that Central Machinery reads *Boatowners* too broadly.[5] Most courts now agree that an entity does not obtain an enforceable right simply because it benefits from the statute's provisions. *See, e.g., Brown v. Hous. Auth. of McRae*, 784 F.2d

---

**5.** *Boatowners* may be read as holding that the existence of special benefit creates enforceable rights. However, such a reading is inconsistent with both *Pennhurst* and subsequent Ninth Circuit cases. The statutes at issue in *Pennhurst* unquestionably specially benefitted the mentally handicapped. Nevertheless, the Supreme Court left open the question of whether enforceable rights were created. *Pennhurst*, 451 U.S. at 27–30, 101 S.Ct. at 1545–46. Furthermore, subsequent Ninth Circuit decisions have not used the special benefit test to determine whether or not a particular statutory scheme creates enforceable rights. *See Keaukaha-Panaewa Comm. v. Hawaiian Homes*, 739 F.2d 1467, 1471 (9th Cir. 1984) (the *Pennhurst* decision "implied that a[n] [enforceable] right is created when Congress

mandates, rather than merely encourages a specified entitlement").

We also cannot endorse the use of the *Cort v. Ash* implied right of action test in § 1983 actions. *Boatowners* asserted that the use of *Cort v. Ash* in § 1983 actions is one of three major methods of determining the existence of enforceable rights. 716 F.2d at 671–72. In support, the court cited *Perry v. Hous. Auth. of Charleston*, 664 F.2d 1210, 1217 (4th Cir.1981). *Boatowners*, 716 F.2d at 672 n. 4. The court offered no other justification for the applicability of *Cort v. Ash*. Our review of *Perry* indicates that the Fourth Circuit did not use *Cort v. Ash* in its § 1983 analysis. Therefore, *Boatowner's* use of *Cort v. Ash* is both isolated and unjustified.

1533, 1537 (11th Cir.1986); *Gould, Inc. v. Wisconsin Dept. of Indus., Labor, and Human Relations,* 750 F.2d 608, 616 (7th Cir.1984), *aff'd,* 475 U.S. 282, 106 S.Ct. 1057, 89 L.Ed.2d 223 (1986). Nothing in *Boatowners* indicates that the mere finding that a statute is intended to provide special benefit to a particular group justifies the conclusion that enforceable rights are conferred by the statute. *Boatowners* was primarily concerned with the threshold issue of whether a regulatory statutory scheme is capable of supporting a § 1983 action. The *Boatowners* court held that the River and Harbor Improvements Act at issue, 33 U.S.C. §§ 540–633, was only intended to benefit the general public and therefore could not support a § 1983 action. 716 F.2d at 673–74. The *Boatowners* court never reached the issue before this court. 716 F.2d at 673–74. *See White Mountain Apache Tribe v. Williams,* 798 F.2d 1205 (9th Cir.1986) (the relevant focus for inquiry in a § 1983 action is not primarily whether a regulatory scheme was designed to benefit a particular group).

Courts confronting the enforceable rights issue have not clearly drawn the line that separates mere benefit from "enforceable rights." For example, the Fourth Circuit looks to the substantive provisions of statutes to determine whether § 1983 plaintiffs are granted "tangible rights" or are merely beneficiaries of general congressional policy. Only if courts can ascertain the scope of "rights" with certainty will they be enforceable in a § 1983 action. *Phelps v. Hous. Auth. of Woodruff,* 742 F.2d 816, 821 (4th Cir.1984); *Perry v. Hous. Auth. of Charleston,* 664 F.2d 1210, 1217 (4th Cir.1981). The Second Circuit has also recognized that a statute containing precise standards creates enforceable rights. *Beckham v. New York City Hous. Auth.,* 755 F.2d 1074, 1077 (2nd Cir.1985).

*But see Brown,* 784 F.2d at 1536 n. 3 (court chooses to concur with *Wright* and acknowledges that *Beckham* is apposite); *see also Wright v. City of Roanoke Redev. & Hous. Auth.,* 771 F.2d 833 (4th Cir.1985), *cert. granted,* ⸺ U.S. ⸺, 106 S.Ct. 848, 88 L.Ed.2d 889 (1985). The D.C. Circuit has said that a § 1983 action lies only when a particular course of conduct is mandated and looks to specific legislative use of words such as "shall" and "entitlement." *Samuels v. Dist. of Columbia,* 770 F.2d 184, 196–98 (D.C.Cir.1985). The Third Circuit also looks to the statutory language. If statutory or regulatory language is "cast in the imperative" then enforceable rights are created. *Alexander v. Pope,* 750 F.2d 250, 259 (3rd Cir.1984). *See also Student Coalition for Peace v. Lower Merion School Dist.,* 776 F.2d 431, 438–39 (3rd Cir.1985) (mandatory language in Equal Access Act stating "It *shall be unlawful* ... to deny equal access ... to ... any students who wish to conduct a meeting" creates enforceable § 1983 rights) (emphasis original).

■ We do not have to resolve discrepancies between various circuits in order to reach a conclusion about the enforceability of "rights" created by the Indian trader statutes. The clear thrust of *Pennhurst,* and all the cases applying *Pennhurst,* is that enforceable § 1983 rights arise only when Congress mandates specific acts or standards. Only the strength of the mandate or the degree of specificity is disputed. No specific acts are required by the Indian trader statutes. No specific standards are established by the Indian trader statutes. The statutes only grant the Commissioner of Indian Affairs discretion to establish standards that conceivably could create enforceable rights. That discretion by itself, however, merely represents general congressional intent to benefit Indians.[6]

6. The court of appeals held that *Warren Trading Post, supra,* was dispositive of this appeal. In particular, the court held that the Supreme Court's statement that the Indian trader statutes ensure "that no burden shall be imposed upon Indian traders," 380 U.S. at 690–91, 85 S.Ct. 1242, 1245–46, created enforceable rights. *Cen-*

*tral Machinery v. Arizona,* 152 Ariz. at 132–33, 730 P.2d at 841–42. We believe, however, that *Warren Trading Post* merely established that the Indian trader statutes were intended to benefit Indians. *Warren Trading Post* recognized that the Commissioner of Indian Affairs could issue regulations burdening commerce on

Central Machinery's best argument is found in the right of Indian tribes to force the Commissioner of Indian Affairs to adopt rules and regulations pursuant to the Indian trader statutes. In *Rockbridge v. Lincoln*, 449 F.2d 567 (9th Cir.1971) the Ninth Circuit held that the Indian trader statutes did not grant the Commissioner of Indian Affairs unlimited discretion to promulgate regulations. 449 F.2d at 572. Accordingly, Indians injured through the failure of the Commissioner to issue regulations may invoke the jurisdiction of federal courts and force the Commissioner to issue regulations that benefit Indians in the manner Congress intended. *See United States v. Markgraf,* 736 F.2d 1179, 1183 (7th Cir.1984) (Secretary of Agriculture may not refuse to regulate where Congress has provided standards for the exercise of discretion).

It may appear axiomatic that if Indians have the right to sue under the Indian trader statutes to force the Commissioner to act, they have enforceable rights pursuant to § 1983. *Rockbridge,* however, does not undercut our determination that the Indian trader statutes do not create "enforceable rights." *Rockbridge* centered on the discretion granted the Commissioner of Indian Affairs. The decision merely recognized that the Indian trader statutes were enacted to benefit Indians and that the Commissioner of Indian Affairs had to comply with federal statutes. *Rockbridge,* 449 F.2d at 572. *Rockbridge* did not hold that the Indian trader statutes establish the type of specific mandate enforceable in § 1983 actions.

■ Even assuming the Indian trader statutes created enforceable rights, however, we would not find the original action to be cognizable under § 1983. The original action for a tax refund was decided upon preemption grounds. The Supreme Court stated that "by enacting these [Indian trader] statutes Congress 'has under-

taken to regulate reservation trading in such a comprehensive way that there is no room for the states to legislate on the subject.'" *Central Machinery Co. v. Arizona State Tax Comm'n,* 448 U.S. at 165–66, 100 S.Ct. at 2596, *quoting Warren Trading Post,* 380 U.S. at 691 n. 18, 85 S.Ct. at 1246 n. 18. The Court clearly ruled that Arizona's actions did not violate any particular federal statute or regulation. "It is the existence of the Indian trader statutes, then, and not their administration, that preempts the field of transactions with Indians occurring on reservations." 448 U.S. at 165, 100 S.Ct. at 2596. We are not persuaded, even assuming that an enforceable right existed, that such rights were violated. We must conclude, therefore, that the tax imposed by Arizona did not deprive Gila River Farms of a right, privilege or immunity secured by the laws of the United States. *See Williams,* 798 F.2d at 1213 (preemption claim not involving actual conflict between federal and state statutes cannot support § 1983 action).

The original tax refund action is not, therefore, cognizable under § 1983 unless Arizona violated a right, privilege or immunity guaranteed by the United States Constitution.

## CONSTITUTIONAL BASIS FOR ATTORNEY'S FEES

Central Machinery has argued that Arizona's tax violated both the commerce clause and the Indian commerce clause. U.S. Const. art. I, § 8, cl. 3. The court of appeals, however, did not look to the commerce clause but rather the supremacy clause when it held that the tax refund action was cognizable under § 1983. *Central Machinery Co. v. Arizona,* 152 Ariz. at 134, 730 P.2d at 843. We hold that none of these three constitutional provisions adequately supports the award of attorney's fees.

Indian reservations. 380 U.S. 688–91, 85 S.Ct. 1244–45. Congress, therefore, did not create in Indians an "enforceable right" to trade without restriction. Congress only intended that Indians trading on reservations benefit from super-

vision by the Commissioner of Indian Affairs. *Warren Trading Post,* therefore, cannot support the proposition that the Indian trader statutes create enforceable rights.

*Commerce Clause*

■ The United States Supreme Court invalidated the Arizona tax because the Indian trader statutes regulate reservation trading in a comprehensive fashion. *Central Machinery v. Arizona State Tax Comm.*, 448 U.S. at 165–66, 100 S.Ct. at 2596. Although the Indian trader statutes were enacted pursuant to Congress' commerce clause power, *Warren Trading Post*, 380 U.S. at 691 n. 18, 85 S.Ct. at 1246 n. 18, the Supreme Court did not hold, nor is there any authority for holding, that a state tax on Indians is a violation of the commerce clause. *See, e.g., Moe v. Confederated Salish & Kootenai Tribes*, 425 U.S. 463, 480–81 n. 17, 96 S.Ct. 1634, 1645 n. 17, 48 L.Ed.2d 96 (1976). Accordingly, no violation of the commerce clause is at issue in this case. *Cf. Consol. Freightways Corp. v. Kassel*, 730 F.2d 1139 (8th Cir.) (unsuccessful claim for § 1988 attorney's fees brought after state statute restricting use of sixty-five foot trailers held invalid), *cert. denied*, 469 U.S. 834, 105 S.Ct. 126, 83 L.Ed.2d 68 (1984).

*Indian Commerce Clause*

■ Central Machinery argues that the Indian commerce clause provides a separate constitutional basis for a § 1983 cause of action. The Indian commerce clause actually is found within the commerce clause, art. 1, § 8: "Congress shall have Power ... [t]o regulate Commerce ... with the Indian tribes[.]" Central Machinery claims that this clause, of its own force, does not tolerate a State burden directly imposed on commerce with the tribe itself on its own reservation. The Supreme Court, however, has stated:

It can no longer be seriously argued that the Indian Commerce Clause, of its own force, automatically bars all state taxation of matters significantly touching the political and economic interests of the Tribes. That Clause may have a more limited role to play in preventing undue discrimination against, or burdens on, Indian commerce.

*Washington v. Confederated Tribes*, 447 U.S. 134, 158, 100 S.Ct. 2069, 2083, 65 L.Ed.2d 10 (1980) (citations omitted).

Central Machinery cites three decisions of the United States Supreme Court to support its position. All three cases simply established Congress' expansive power to control Indian commerce. *The Kansas Indians*, 72 U.S. (5 Wall.) 737, 18 L.Ed. 667 (1866), held only that certain Indian tribes, under the exclusive control of Congress, were not subject to state taxation. *Id.* at 755–57. *United States v. Forty-three Gallons of Whiskey*, 93 U.S. (3 Otto) 188, 23 L.Ed. 846 (1876), held only that Congress has the power to freely regulate Indian commerce. *Id.* at 194. Similarly, *United States v. Holliday*, 70 U.S. (3 Wall.) 407, 18 L.Ed. 182 (1865), established simply that the Indian commerce clause authorized federal regulation of Indian commerce occurring completely within one state's boundaries. *Id.* at 418. The cases do not define state behavior that violates the Indian commerce clause.

*The Supremacy Clause*

■ We disagree with the court of appeals determination that rights secured by the supremacy clause are enforceable in a § 1983 action. Every federal treaty, statute or regulation is "secured" by the supremacy clause. *Williams*, 798 F.2d at 1208, *quoting Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 613, 99 S.Ct. 1905, 1913–14, 60 L.Ed.2d 508 (1979). If the supremacy clause created enforceable rights, the holdings in *Pennhurst* and *Sea Clammers* would be undermined. Any violation of a federal statute under color of state law would be a "violation" of the supremacy clause and, therefore, the basis of a § 1983 action. *Pennhurst* and *Sea Clammers* establish, though, that not every federal statute will support a § 1983 action. The court of appeals decision, then, conflicts with these recent Supreme Court cases. Furthermore, if the supremacy clause created substantive rights, then the phrase "and laws" in § 1983 would be superfluous because any violation of a feder-

al statute, under color of state law, would be a constitutional violation. We will not construe the statute in such a manner. *See Chapman*, 441 U.S. at 621–23, 99 S.Ct. at 1918–19 (1979), *quoting Georgia v. Rachel*, 384 U.S. 780, 789–92, 86 S.Ct. 1783, 1788–90, 16 L.Ed.2d 925 (1966); *Williams*, 798 F.2d at 1213 (no cognizable rights under § 1983 were created merely as a result of preemption under the supremacy clause); *Gould, Inc.*, 750 F.2d at 616 (supremacy clause violation does not present a cognizable claim under § 1983).

Our position is supported by *Chapman, supra.* In *Chapman*, the Supreme Court held that the supremacy clause did not create substantive rights within the meaning of 28 U.S.C. § 1343(3). *Id.* 441 U.S. at 614–15, 99 S.Ct. at 1914–15. Section 1343(3) grants federal courts jurisdiction "[t]o redress the deprivation, under color of any State law, ... of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights...." The Court held that "to give meaning to the entire statute [§ 1343] as written by Congress, we must conclude that an allegation of incompatibility between federal and state statutes and regulations does not, in itself, give rise to a claim 'secured by the Constitution'...." 441 U.S. at 615, 99 S.Ct. at 1915. Similarly, an allegation of incompatibility between the Arizona sales tax and the Indian trader statutes cannot support a § 1983 action.

In conclusion, the state has not subjected Central Machinery or the Indian River Farms to a deprivation of rights, privileges or immunities secured to them by the Constitution and laws of the United States. The § 1988 claim must fail because the original tax refund action is not cognizable under § 1983.

The opinion of the court of appeals affirming an award of attorney's fees to Central Machinery is vacated. Central Machinery's motion for attorney's fees under 42 U.S.C. § 1988 is hereby dismissed.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.