# George Packard v. Richard M. Gordon, Vt. Criminal Justice Training Council, Town of Hartford, Chief Guarino and Ralph Lehman

[537 A.2d 140]

No. 84-433

Present: Allen, C.J., Hill, Peck, Gibson and Hayes,* JJ.

Opinion Filed November 13, 1987

---

* Justice Hayes was present at oral argument, but did not participate in the decision.

*Biederman & Rakow, P.C.*, Rutland, for Plaintiff-Appellant.

*Jeffrey L. Amestoy*, Attorney General, and *Samuel E. Johnson*, Assistant Attorney General, Montpelier, for Defendants-Appellees.

**Peck, J.** Plaintiff, a Hartford police officer, appeals the trial court's failure to determine his status as a "qualified handicapped individual" under the Vermont Fair Employment Practices Act (21 V.S.A. §§ 495-496). Defendants, Richard Gordon (Gordon) and the Vermont Criminal Justice Training Council (Council), cross-appeal, raising five issues: (1) that the findings of the trial court are not supported by the record; (2) that the trial court erred by granting a directed verdict for the defendant Town; (3) that the trial court's conclusions of law were unsupported by the record; (4) that the trial court erred by applying the "qualified handicapped individual" standards of § 495 to the facts while declining to decide the § 495 claim; and (5) that the trial court erred by awarding attorney's fees pursuant to 42 U.S.C. § 1988. We affirm in part and reverse in part and remand for a determination of plaintiff's status under § 495.

Plaintiff was hired by the Town of Hartford (Town) as a temporary police officer in February, 1982, pursuant to a ten-week CETA training program funded by the federal government. Thereafter, he was retained as a temporary police officer for a one-year period until May, 1983, when he was hired as a regular full-time police officer. Plaintiff has a significant hearing problem that was known by the Town at all times relevant to this case.

Prior to July 5, 1983, plaintiff was certified to the Vermont Police Academy (Academy) by the Hartford police chief to receive the basic training for regular police officers required under 20 V.S.A. § 2358(a)(2)(A). When it became clear that plaintiff was having hearing difficulties at the Academy, Gordon, executive director of the Council, directed plaintiff to obtain a hearing aid. Plaintiff borrowed a hearing aid and later obtained one of his own.

The principal differences between the parties arose over plaintiff's capacity to meet the requirements of firearms training at the Academy. Specifically, the disagreement was over trainee hearing protection and plaintiff's inability to hear and understand commands on the firing line. Evidence below demonstrated that training with a .38 caliber pistol requires only outer-ear protection while training with the .357 Magnum, because of the louder report, is conducted with both outer- and inner-ear protection. The trial court found that plaintiff could understand firing range commands with single-ear protection, but could not hear the commands while wearing double-ear protection. Testimony below established that during .357 Magnum training plaintiff had difficulty hearing the instructor's commands, frequently turning to the instructor who stood next to the plaintiff to verify commands. According to the State's witnesses, the plaintiff was removed from the firing line "for safety reasons." The range master testified that plaintiff could never be trained to handle a firearm safely as a street police officer.

A witness for plaintiff testified that accommodations could have been made for plaintiff's inability to hear by using an amplification system or tapping him on the shoulder. The State responds that such suggestions are based on marksmanship or target shooting only and that none of a student's forty-four hours of instruction in firearms are devoted to "marksmanship-type shooting." The emphasis at the Academy, according to State witnesses, is survival shooting, which teaches the proper time to shoot, the proper target to shoot, and "shoot/don't shoot" drills using friend and foe targets.

Plaintiff was notified in his ninth week of class by defendant Gordon that he constituted a hazard on the firing range because he could not hear the commands and would not, for that reason, be allowed to complete the twelve-week course. Plaintiff offered to fire the .357 Magnum without double-ear protection, but the

Council would not allow him to do this and found no alternative but to dismiss the plaintiff from the Academy.

In a memo to plaintiff's file dated August 9, 1983, Gordon detailed reasons why he believed plaintiff should be dismissed from the Academy, including the plaintiff's extreme nervousness on the firing range, his physical limitations, and plaintiff's overall unsuitability due to his hearing deficiency to serve in the role of a police officer. As a result of this dismissal and plaintiff's failure to obtain a certificate from the Academy, plaintiff was suspended from active duty as a regular police officer with the Hartford Police Department on August 17, 1983.

The trial court concluded that the Council lacked statutory authority to dismiss the plaintiff prior to completion of the training course absent any indication that the plaintiff was a threat to other students. The trial court held that the dismissal was based on an arbitrary physical requirement unrelated to job performance. Specifically, the trial court found that the double-ear protection requirement was unrelated to the job functions of a police officer.

The trial court also held that the dismissal violated plaintiff's due process rights since he had a property interest in remaining at the Academy and could only be removed for cause after a hearing. 24 V.S.A. §§ 1931-1932. Indeed, plaintiff was not afforded a pretermination hearing by the Council prior to his dismissal from the Academy nor was plaintiff provided a hearing prior to or after being suspended from active police duty by the Town. In conjunction with this due process finding, the trial court awarded plaintiff attorney's fees under 42 U.S.C. § 1988.

Finally, the trial court declined to decide whether plaintiff was a "qualified handicapped individual" as defined in 21 V.S.A. § 495d(6). Plaintiff's sole ground for appeal is that the trial court erred in declining to reach this issue.

## I.

■ It appears that the trial court had sufficient evidence before it to make a determination of plaintiff's status as a "qualified handicapped individual." The trial court concluded that plaintiff was a "handicapped person" as defined by 21 V.S.A. § 495d(5). In order to be deemed a "qualified handicapped individual," one must meet the standards of § 495d(6), which reads in part:

"Qualified handicapped individual" means an individual with a handicap who is capable of performing the essential functions of the job or jobs for which he is being considered with reasonable accommodation to his handicap.

The key issues within § 495d(6) are, what constitutes the "essential functions" of the job, and what constitutes "reasonable accommodation." Despite an extensive evidentiary record, the trial court concluded that absent evidence that plaintiff had completed an approved training course statutorily required for police officers a decision could not be made as to plaintiff's status as a "qualified handicapped individual" under § 495d(6). The problem with this reasoning is that it posits as a condition to resolving plaintiff's status under § 495d(6) his completion of the training course at the Academy, with the incongruous result that a claim of improper dismissal from the Academy under § 495 could never be brought by plaintiff.

We note that the question raised by § 495d(6) is whether an individual is capable of performing the essential functions of the job with reasonable accommodation to his handicap, which includes considerations of whether the applicant, with "reasonable accommodation," could complete the course of study which is a statutory prerequisite for the job of a regular police officer. See *Alexander v. Choate*, 469 U.S. 287, 300-01 (1985) (Under § 504 of the Rehabilitation Act reasonable accommodation may have to be made for an otherwise-qualified handicapped individual to have meaningful access to a required training program.); *Southeastern Community College v. Davis*, 442 U.S. 397, 407-10 (1979); *Strathie v. Department of Transp.*, 716 F.2d 227, 230 (3d Cir. 1983); *Stutts v. Freeman*, 694 F.2d 666, 669 (11th Cir. 1983). To reason otherwise would be to sanction discrimination at the training phase and would result in precluding handicapped individuals from retaining jobs for which a training course is a prerequisite.

It does not suffice for the trial court to have granted relief to plaintiff in its order of August 2, 1984. Plaintiff correctly points out that even if he is recertified to a Council-approved training course, without being deemed a "qualified handicapped individual" the recertification would merely set the stage for the very same events to unfold as gave rise to the instant suit.

The court in some of its findings notes ways in which the Academy might have accommodated plaintiff's handicap. While these

findings appear to be supported by the evidence, unless plaintiff is found to be a "qualified handicapped individual" the Academy does not have to accommodate plaintiff in these, or any other, ways.

■ The trial court erred by not deciding plaintiff's status. The necessary evidence was before the court, and a determination of whether plaintiff was a "qualified handicapped individual" was essential to a proper outcome. Thus, the case must be remanded for a determination of the plaintiff's status as a "qualified handicapped individual" and for further findings as to whether the Council is able reasonably to accommodate plaintiff's handicap.

## II.

Defendants appeal a number of findings relating to the hearing protection standards of the Academy. Defendants argue that the trial court refused to give adequate consideration to VOSHA noise reduction standards and to the Academy's responsibilities for protecting the hearing of students at the Academy. Specifically, defendants disagree with the trial court's treatment of the Academy's requirement that students wear double-ear protection on the firing range.[1] Again, these are findings that relate to the "reasonable accommodation" necessary for the plaintiff and the burden that such an accommodation would place on the defendant. These are issues that the trial court will need to decide on remand once a determination has been made of the plaintiff's status under § 495d(6).

Defendants further argue that the trial court erred in concluding that the safety hazards perceived by the instructors and director of the Academy were de minimis.[2] Again, this is an argument that seems to depend upon whether the plaintiff is deemed a

---

[1] Finding #32 of the trial court is that: "Double ear protection was not required on the firing range during .357 magnum practice until an April 15, 1981, decision (Defendants' Exhibit AA) by the Council. There is no evidence of an OSHA or VOSHA regulation or any other regulation requiring this double ear protection other than as referred to in Defendants' Exhibit AA. In that Exhibit it appears that the Vermont Fish & Game Department was cited by VOSHA for improper ear protection on the firing range, and as a result the Council decided to require double ear protection when .357 magnum revolvers were being fired."

[2] The trial court stated in its conclusions of law that: "The Court feels any 'hazard' perceived by the instructors or Executive Director was de minimis, and appeared to mask the real belief that plaintiff would not make a suitable police officer because of a hearing problem or for other reasons."

"qualified handicapped individual." For, in light of such determination, any safety hazards and possible accommodations to the plaintiff can be discussed within the context of what constitutes "reasonable accommodation" for the plaintiff.

Defendants also claim that a number of the court's findings are not supported by the evidence, or are inaccurate, incomplete or misleading. " '[F]indings of fact and conclusions of law by the trial court will not be disturbed on appeal unless clearly erroneous when viewed in the light most favorable to the prevailing party.' " *Murray* v. *J & B Int'l Trucks, Inc.*, 146 Vt. 458, 466, 508 A.2d 1351, 1356 (1986) (quoting *Finley* v. *Williams*, 142 Vt. 153, 155, 453 A.2d 85, 86 (1982)). Upon examination the court's findings appear to be supported by the evidence and are not clearly erroneous and therefore will not be disturbed on appeal.

Defendants Gordon and the Council also argue that the trial court erred in granting a directed verdict in favor of defendant Town. They contend that it was incumbent upon the Town to provide plaintiff with a hearing prior to any termination. The Town, however, asserted that the plaintiff had not been terminated from his job, but had merely been placed on inactive status. The trial court so found and granted the Town's motion for a directed verdict. We agree with this result.

The crux of the matter is the plaintiff's dismissal from the Academy. It is difficult to see how the Town would be required to give the plaintiff a hearing prior to his dismissal from the Academy. Thus, considering the evidence in the light most favorable to the plaintiff, this was a decision well within the discretion of the trial court and will not be overturned on appeal. *Murray* v. *J & B Int'l Trucks, Inc.*, 146 Vt. at 466, 508 A.2d at 1356 (quoting *Finley*, 142 Vt. at 155, 453 A.2d at 86).

The defendants also appeal the trial court's finding that plaintiff's due process rights were violated by not being afforded a hearing prior to dismissal from the Academy. Defendants argue that the trial court's finding that plaintiff was not informed of his right to appeal the Council's decision on termination is not supported by any credible evidence. Again, there is evidence in the record to support the lower court's decision.[3] The trial court's de-

---

[3] Finding #48 stated that: "[D]efendant Gordon contends that plaintiff was informed of his right to appeal the decision of the Council and Executive Director dismissing him from the academy. There are no procedures for such an appeal set out in the rules governing the Council or by statute, nor was plaintiff in-

termination was made after weighing all the evidence, and thus the determination that the plaintiff's due process rights were violated was properly made. See *In re Maher*, 132 Vt. 560, 563-64, 326 A.2d 142, 144-45 (1974).

Finally, defendants argue that the trial court erred in awarding plaintiff attorney's fees. Defendants claim that plaintiff's failure to state explicitly in the complaint that he was proceeding under 42 U.S.C. § 1983 precludes an award of attorney's fees under 42 U.S.C. § 1988. 42 U.S.C. § 1988 states:

> In any action or proceeding to enforce a provision of sections . . . 1983, . . . of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fees as part of the costs.

■ The general rule is that § 1983 need not be explicitly pled in order to obtain attorney's fees under § 1988. See, e.g., *Gumbhir v. Kansas State Bd. of Pharmacy*, 231 Kan. 507, 513-15, 646 P.2d 1078, 1084-86 (1982), *cert. denied*, 459 U.S. 1103 (1983). Cf. *White* v. *New Hampshire Dept. of Empl. Sec.*, 455 U.S. 445 (1982); *Central Machinery Co.* v. *State*, 152 Ariz. 134, 138 n.3, 730 P.2d 843, 847 n.3 (1986), *cert. denied*, ___ U.S.___, 107 S. Ct. 1984 (1987). In the instant case plaintiff asked for reasonable attorney's fees in his amended complaint. A specific mention of § 1983 is not necessary for the trial court to award plaintiff such relief. *Gumbhir*, 231 Kan. at 513-15, 646 P.2d at 1084-86.

This case is remanded back to the trial court for a determination of plaintiff's status as a "qualified handicapped individual" as set out in 21 V.S.A. § 495d(6). Further findings must be made in the areas specifically mentioned above in the light of a determination of plaintiff's status. The rest of the record, in the interests of judicial efficiency, shall remain intact on remand as no reversible error appears.

*We affirm in part and reverse in part and remand for further proceedings consistent with this opinion.*

---

formed of the details of any appeal process. The credible evidence does not support defendants' contention that plaintiff was informed of a right to appeal the Council's decision."